**In re Jerry Eugene WILBURN Debtor.**

**Peggy WILBURN, Plaintiff,**

v.

**Jerry WILBURN, Defendant.**

**Bankruptcy No. 90–32824.**
**Adv. No. 90–3257.**

United States Bankruptcy Court,
E.D. Tenn.

April 4, 1991.

Eric D. Christiansen, Greeneville, Tenn., for plaintiff.

Russell D. Mays, Greeneville, Tenn., for defendant/debtor.

## MEMORANDUM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The debtor's former wife seeks a determination that certain obligations imposed upon the debtor under the provisions of a Marital Dissolution Agreement are nondischargeable under 11 U.S.C.A. § 523(a)(5) (West 1979 & Supp.1990). The plaintiff seeks a judgment for the amount of the debts determined to be nondischargeable. A Pretrial Order containing stipulated facts and documents and defining those issues the court is called upon to resolve was entered January 7, 1991. All issues were tried before the court on February 12, 1991.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West Supp.1990).

### I

From the record before it, the court makes the following findings:

1. The parties were married on June 9, 1972. They have one child, Kelley Renea Wilburn, born April 14, 1975.

2. The parties were separated on May 7, 1989. On May 17, 1989, the plaintiff filed a complaint for divorce in the Circuit Court for the Third Judicial District in Greeneville, Tennessee. On May 25, 1989, a Judgment was entered granting the plaintiff a divorce from the debtor. Incorporated into the divorce decree are the provisions of a

Marital Dissolution Agreement entered into between the parties. The Marital Dissolution Agreement contains the following material provisions:

1. The Wife shall have the care, custody and control of the minor child of the parties....

2. The Husband shall pay to Wife, by personal check, on or before the 10th day of each month, beginning on or before the 10th day of June, 1989, the sum of $433.33 per month for the support and maintenance of the minor child. In addition, he shall provide monies necessary for the child's school expenses, including, but not limited to, camps, tuition, equipment, trips, etc.

3. The Husband shall provide medical insurance for the use and benefit of the child. In addition, he shall pay all uninsured medical, dental, orthodontal, psychological, pharmaceutical and like expenses incurred for her benefit.

4. Should the parties' child choose to attend a state college, university, vocational or technical school, Husband shall pay all expenses of room, board, books and tuition for a period not to exceed four (4) calendar years.

5. Upon the child's sixteenth birthday, and her becoming a licensed driver, Husband shall provide her with an automobile for her exclusive use and possession for so long as he has obligations to her under this agreement. In addition, he shall pay as they become due all expenses of operation, maintenance, insurance, and tags therefore.

6. Upon execution of this Agreement, Husband shall execute and deliver to Wife in recordable form a deed of all his right, title and interest in and to the marital dwelling house. In addition, he shall discharge as they become due any and all debts secured by deeds of trust upon said property, including, but not limited to, those debts owed to Lumberman's Investment Corporation, Sovran Bank, Greeneville Auto Parts, Inc.

and/or Joe Peake, and hold Wife harmless therefore....

....

9. The Wife shall have as her sole and exclusive property the 1987 Astro van. Husband shall discharge the obligation subsisting against same as it shall become due and hold Wife harmless therefore. In addition, until the obligation is paid in full, Husband shall continue to provide liability and collision insurance on the vehicle at its present rate and registration and tags therefore....

....

11. Wife shall continue to be the beneficiary of all policies of insurance presently in existence on Husband's life for so long as Husband has any obligations to her under this Agreement. Husband shall pay all premiums on said policies as they shall become due and hold Wife harmless therefore....

14. Husband shall pay to Wife on or before the 10th day of each month, beginning on or before the 10th day of June, 1989 as periodic alimony the sum of $800.00 per month. These payments shall continue until Wife's remarriage or until the death of either party.... [1]

3. In addition to the language quoted above, paragraphs 6, 9, 11, and 14 of the Marital Dissolution Agreement each contain the following concluding sentence:

This obligation is in the nature of alimony and is non-dischargeable in bankruptcy under the provisions of Section 523(a)(5), Title 11, United States Code.

4. The plaintiff was represented by counsel during the divorce. The debtor did not have counsel.

5. The debtor is thirty-seven years old. He has a high school education. At the time the parties were divorced, he was the proprietor of a business in Greeneville, Tennessee, known as Jerry's Auto Parts. During 1987, he realized a net profit of $11,882 from the operation of his business.

---

1. The parties stipulated at trial that subsequent to the divorce the debtor's alimony obligation was, by mutual agreement, reduced to $100 per week or $433.33 per month.

At the trial the debtor was unable to recall the profit or loss realized from his business in 1988. He testified, however, that in 1989 his business lost approximately $26,000. He closed Jerry's Auto Parts in July, 1990, prior to filing his bankruptcy petition under Chapter 7 on July 20, 1990. He has remarried. Efforts to obtain employment since he filed his bankruptcy petition were unsuccessful until early this year. On January 5, 1991, he obtained employment selling novelty items. His gross income approximates $200 per week. His wife is unemployed. He testified that his financial condition has been such that he has been unable to make those payments imposed upon him under the terms of the Marital Dissolution Agreement since March, 1990. During the past eleven months, he has made two $100 payments toward his child support obligation.

6. At the time the parties divorced, the plaintiff was unemployed. She was, however, in pursuit of a beautician's license which she has now obtained. She is presently employed by a business known as Ther-ex, Inc., at a job from which she takes home approximately $160.00 per week. At the trial, she testified she was to be married on February 14, 1991, to a man she has cohabited with since December, 1990.[2] The plaintiff and her daughter have continued to reside in the marital residence at 1335 Daisy Street, Greeneville, Tennessee. She has made no payments on the mortgages encumbering this property subsequent to the divorce, and testified that she will find another residence after she remarries. Mrs. Wilburn filed a voluntary petition under Chapter 7 on December 10, 1990. She scheduled and discharged the three mortgages encumbering the 1335 Daisy Street property through her bankruptcy.[3] In her Statement of Intentions filed pursuant to 11 U.S.C.A. § 521 (West Supp.1990), she

states, as she did at the trial, her intention to surrender the former marital residence. Obligations to Sovran Bank, the holder of the lien on the 1987 Astro Van retained by the plaintiff under the terms of the Marital Dissolution Agreement, have been discharged through her bankruptcy. Although there is no direct testimony to this effect, it appears Mrs. Wilburn no longer is in possession of the Astro Van.[4] The record does not establish that the plaintiff was required to make any payments on the van after the parties' divorce.

## II

Mrs. Wilburn seeks a nondischargeable judgment in the amount of $21,356.26 (Exhibit 1).[5] This requested judgment is made up of the following components: (1) unpaid child support payments due under paragraph 2 of the Marital Dissolution Agreement in the amount of $4,566.63, representing eleven (11) monthly payments at $433.33 each with credit given for $200 paid by the debtor; (2) unpaid health insurance premiums due under paragraph 3 of the Marital Dissolution Agreement for the benefit of the parties' minor child in the amount of $2,596, representing eleven (11) monthly payments at $236 each; (3) unpaid mortgage payments owing under paragraph 6 of the Marital Dissolution Agreement in the amount of $4,510, representing eleven (11) monthly payments at $410 each; (4) unpaid installment payments on the 1987 Astro Van due under paragraph 9 of the Marital Dissolution Agreement in the amount of $4,477, representing eleven (11) monthly payments at $407 each; (5) unpaid life insurance premiums owing under paragraph 11 of the Marital Dissolution Agreement in the amount of $440, representing eleven (11) monthly payments at $40 each; and (6) unpaid alimony owing under the

2. The court assumes this marriage has now taken place.

3. The Discharge Order was entered in Mrs. Wilburn's case on March 22, 1991.

4. The plaintiff does not schedule the 1987 Astro Van as an asset of her estate. She does, however, at paragraph 13 of the "Statement of Financial Affairs for Debtor Not Engaged in Busi-

ness" filed contemporaneously with her petition, state that this vehicle was repossessed by Sovran Bank in July, 1990.

5. Exhibit 1 filed by the plaintiff lists the items supporting the requested judgment at a total of $20,916.26. The plaintiff's computations are understated by $440.00.

provisions of paragraph 14 of the Marital Dissolution Agreement, as modified,[6] in the amount of $4,766.63, representing eleven (11) monthly payments at $433.33 each.

At the trial, counsel for the plaintiff acknowledged that the debtor's obligations under paragraphs 4 and 5 of the Marital Dissolution Agreement requiring him to pay the minor child's college expenses and provide her an automobile on her sixteenth birthday, are not items of support cognizable under § 523(a)(5). The plaintiff, accordingly, no longer requests a determination that these obligations are nondischargeable.

### III

Bankruptcy Code § 523(a)(5) provides in material part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C.A. § 523(a)(5) (West 1979 & Supp. 1990).

The United States Court of Appeals for the Sixth Circuit has established a four-part test for determining the dischargeability of an obligation under § 523(a)(5) where that obligation arises out of an assumption and hold-harmless agreement. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983).[7] The step by step inquiry mandated by *Calhoun*, which must be made by the bankruptcy court in determining whether a loan assumed by a debtor is in the nature of alimony or property settlement, is: (1) whether the state court or the parties intended to create a support obligation; (2) whether the assumption has the actual effect of providing necessary support; (3) whether the amount of support represented by the assumption is so excessive as to be manifestly unreasonable when measured by traditional concepts of support; and (4) if the amount of support is unreasonable, how much of it should be discharged for purposes of bankruptcy. *Calhoun*, 715 F.2d at 1109–10.

In the instant proceeding, the *Calhoun* analysis must be applied within the context of past due obligations of the debtor which are acknowledged to be in the nature of support. Solely at issue in *Calhoun* was the dischargeability of a continuing obligation to hold the former spouse harmless of marital debts. There was no claim that the debtor in *Calhoun* was in arrears on his obligations.

Some courts have held that delinquent support obligations are not subject to scrutiny under *Calhoun. Troxell v. Troxell (In re Troxell)*, 67 B.R. 328, 331 n. 3 (Bankr.S.D.Ohio 1986); *McArtor v. Rowles (Matter of Rowles)*, 66 B.R. 628 (Bankr.N. D.Ohio 1986). See *Caughenbaugh v. Caughenbaugh (In re Caughenbaugh)*, 92 B.R. 255 (Bankr.S.D.Ohio 1988). The court in *Rowles* concluded that past due obligations which are clearly in the nature of support are exempted from the *Calhoun* analysis. The court reasoned as follows:

If such an exemption had not been provided, a debtor could theoretically control

---

6. *See supra* note 1.

7. *Calhoun* was concerned only with a debtor's assumption and hold-harmless agreement. Its application has, however, been held to extend to all § 523(a)(5) inquiries. *Singer v. Singer (In re Singer)*, 787 F.2d 1033, 1038 n. 2 (6th Cir.1986); *Wesley v. Wesley (Matter of Wesley)*, 36 B.R. 526, 529 n. 1 (Bankr.S.D.Ohio 1983); *Helm v. Helm (In re Helm)*, 48 B.R. 215, 220 (Bankr.W.D.Ky. 1985).

the character of debts owed to a former spouse simply by not paying amounts clearly due for support so that the spouse is forced to be self-supporting and then claiming, after the bankruptcy petition is filed, that the debts are a dischargeable property settlement simply because the former spouse is now self-supporting.

66 B.R. at 631.[8]

There is merit in the *Rowles* analysis. However, it appears to this court that *Calhoun*, at least by way of dicta, addresses the limited circumstance under which all or a portion of a past due support obligation may be determined nondischargeable. The court stated that "[i]f, at the time the debts were assumed, the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support." 715 F.2d at 1110 (footnote omitted). Thus, the court in *Calhoun* suggests that a debtor cannot discharge delinquent support payments unless those payments unreasonably exceeded the debtor's ability to pay at the time of the state court judgment.

Other courts have applied the *Calhoun* analysis to support arrearages. One court stated:

This Court will determine whether the divorce related obligation *would have* provided necessary support at any time from the date the obligation became due to the date the obligation is submitted to this Court for a decision on dischargeability under § 523(a)(5).

*Swiczkowski v. Neagley (In re Swiczkowski)*, 84 B.R. 487, 491 (Bankr.N.D.Ohio 1988) (emphasis in original). More recently, another court, addressing the third prong of the *Calhoun* test as it relates to a support arrearage, stated:

In an arrearage situation the question of the reasonableness of the award also must be answered in the context of the time it was originally awarded. The unreasonableness of a support award must be judged as of the time awarded as such award relates to payments in arrears on the date of the bankruptcy filing. That determination is distinguishable from ongoing future payments which will be subject to a test of reasonableness as of the bankruptcy filing date.

*Patterson v. Matyac (In re Matyac)*, 102 B.R. 125, 127 (Bankr.S.D.Ohio 1989). This court agrees with the holdings in *Swiczkowski* and *Matyac*. *Calhoun* is applicable to support arrearages and, thus, to the instant proceeding.

The debtor in proposed findings of fact and conclusions of law submitted February 7, 1991, and in open court at the trial, stated through counsel that he does not dispute the existence of the first two prongs of the *Calhoun* test. In other words, the debtor acknowledges with respect to the disputed provisions of the Marital Dissolution Agreement that the parties intended to create support obligations and that these obligations had the actual effect of providing necessary support to the plaintiff and minor child of the parties. Proof on these two prongs was accordingly not forthcoming at the trial.

Turning to the third *Calhoun* test, the court must determine whether "the amount of support ... is not so excessive that it is manifestly unreasonable under traditional concepts of support." 715 F.2d at 1110. Notwithstanding the debtor's testimony that he was able to meet the disputed obligations through March, 1990, the record before the court in no way supports a finding that the debtor had the general ability to meet all of the obligations imposed upon him under the Marital Dissolution Agreement at the time of the parties' divorce. In

---

**8.** The *Rowles* court reached its conclusion on the strength of a footnote in *Calhoun* where the Sixth Circuit states:

At issue in the present case is solely the dischargeability of a continuing obligation to hold the former spouse harmless on past marital debts. There has been no claim made that Calhoun is in arrears on past payments due under this obligation. The dischargeability of such unpaid past liabilities requires an analysis distinct from consideration of whether the continuing obligation to hold harmless may be discharged.

715 F.2d at 1109 n. 9.

fact, the record clearly supports a contrary finding.

The alimony, mortgage, van, life insurance, health insurance, and child support payments itemized in Exhibit 1, filed by the plaintiff, impose a total monthly obligation on the debtor in the amount of $1,959.33. In 1987, the debtor earned $11,882 from the operation of his business. Although the debtor does not recall his earnings in 1988, the "Statement of Financial Affairs for Debtor Not Engaged in Business" filed by Mrs. Wilburn in her bankruptcy case states at paragraph 2.e. that the debtor earned $8,000 during 1988. In 1989, the debtor's undisputed testimony is that he lost in excess of $20,000 from the operation of his business.[9] At present, the debtor earns $200 per week. Clearly, at the time the parties divorced he was unable to meet the obligations imposed upon him under the Marital Dissolution Agreement. No explanation was offered by the debtor as to why he agreed to make monthly support obligations far in excess of his income. The court observes, however, that the debtor was not represented by counsel during the divorce while plaintiff was represented by counsel who was familiar with the provisions of § 523(a)(5). As previously discussed, paragraphs 6, 9, 11, 12, and 14 of the Marital Dissolution Agreement drafted by plaintiff's counsel each purport to exclude the obligations imposed upon the debtor under the respective paragraphs from discharge in the event of the debtor's bankruptcy.

■ Under the *Calhoun* analysis, the depth of a bankruptcy court's examination of a state court alimony, maintenance, or support award depends upon whether the debt was created as the result of a contested divorce proceeding or by an agreement between the debtor and former spouse which was incorporated into the divorce decree. The court in *Calhoun* stated:

We recognize that such inquiry may, in effect, modify a judgment or decree of a state court. In view of the congressional mandate to apply a federal standard, this cannot be avoided. Actual interference, however, will probably be minimal. In a contested case the likelihood that the state court would have awarded support where it was unnecessary is sufficiently remote that such interference by the bankruptcy court will seldom be necessary. When, as in the present controversy, the decree is not the result of a contested case but merely incorporates the parties' agreement, the concern for comity is of less importance. To allow the parties' characterization of a loan assumption in such cases to control pro forma would permit the debtor to agree to forego his rights under the bankruptcy laws.

715 F.2d at 1109–10 n. 10.

The court went on to state:

It is not intended that the Bankruptcy Court sit as a "super-divorce" court. Rather, the purpose of such inquiry is to ensure that the degree of support represented by the loan assumptions, *particularly in uncontested cases*, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding.

715 F.2d at 1110 n. 12 (emphasis added).

The clear mandate of this language is that a bankruptcy court should give greater deference to an obligation fixed by a state court after hearing a contested divorce proceeding than one which is created by agreement of the parties and merely incorporated into the decree. In this court's opinion, the necessity for a deeper examination by the court of an agreed upon support obligation in an uncontested divorce is even more important when the debtor spouse was not represented by counsel.

The bankruptcy court in its decision in *Matyac* observed:

Two concerns require viewing reasonableness as it relates to arrearages at the original time of the award. First, the

---

**9.** The debtor's testimony on this issue is corroborated in part by the "Statement of Financial Affairs for Debtor Not Engaged in Business" filed by the plaintiff in her bankruptcy case. At paragraph 2.e., Mrs. Wilburn states that the debtor lost $20,000 in 1989.

fresh start can be protected and, second, a debtor is prevented from contracting away the right to a discharge in bankruptcy by actions taken in an earlier non-federal proceeding. To the extent the state court award exceeded the debtor's then current and foreseeable ability to pay, the excess "should not be characterized as support."

102 B.R. at 127 (citing *Calhoun,* 715 F.2d at 1110).

## IV

The court believes the amount of support agreed upon by the parties in the Marital Dissolution Agreement incorporated into the May 25, 1989 divorce decree was unreasonable and excessive. The difficulty is in determining what constituted a reasonable amount of support at the time of divorce. The debtor testified that he met his obligations under the Marital Dissolution Agreement through March, 1990. He does not establish how he was able to accomplish this on his income. Further, the record does not establish, through the debtor's testimony or otherwise, the debtor's personal living expenses at the time of divorce.

■ The court concludes that it has no basis upon which to reduce the $433.33 monthly child support and alimony obligations the debtor agreed to pay under paragraphs 2 and 14 of the Marital Dissolution Agreement.[10] However, the debtor's obligation to pay alimony automatically terminated under the provisions of the divorce decree on February 14, 1991, the date the plaintiff remarried. Notwithstanding this automatic termination, the court will terminate Mrs. Wilburn's entitlement to alimony as of December 10, 1990, the date the December alimony payment was due under the terms of the divorce decree, due to the plaintiff's testimony that she began cohabiting with her present husband in December, 1990.[11]

**10.** *See supra* n. 1.

**11.** Under Tennessee law, there is a rebuttable presumption that a person receiving alimony in futuro who is living with a third person does not need the amount of support previously

■ The court also cannot say that the arrearage associated with the debtor's obligation under paragraph 3 of the Marital Dissolution Agreement to provide medical insurance for his minor child should be discharged.

■ The court finds, however, that the debtor's obligations under paragraphs 6, 9, and 11 of the Marital Dissolution Agreement regarding payments on the house, van, and life insurance, respectively, were so excessive at the time of the parties' divorce as to be "manifestly unreasonable under traditional concepts of support." *Calhoun,* 715 F.2d at 1110. This finding will not work a hardship on the plaintiff. She has remarried and testified that she intends to surrender the parties' former marital residence. Further, she has not been required to make any mortgage payments herself, thus she and the minor child have lived gratis in the marital residence subsequent to the parties' divorce. The 1987 Astro Van was apparently surrendered in July, 1990. The plaintiff has discharged the debts secured by the mortgages encumbering the marital residence and the debt secured by the van through her Chapter 7 case filed December 10, 1990. A finding that the debtor's past due obligations on the residence and van are nondischargeable would result in a windfall to the plaintiff. Neither the plaintiff nor the debtor has any liability on these debts.

In sum, the court finds that the plaintiff is entitled to a nondischargeable judgment in the amount of $10,629.27. This judgment consists of unpaid alimony owing under the provisions of paragraph 14 of the Marital Dissolution Agreement, as modified, in the amount of $3,466.64, representing eight monthly payments at $433.33 each; unpaid health insurance premiums due under paragraph 3 of the Marital Dissolution Agreement for the benefit of the parties' minor child in the amount of $2,596, representing eleven monthly pay-

awarded, and that the court should suspend all or part of the alimony obligation of the former spouse. Tenn.Code Ann. § 36–5–101(a)(3) (Supp.1990).

ments at $236 each; and unpaid child support payments due under paragraph 2 of the Marital Dissolution Agreement in the amount of $4,566.63, representing eleven monthly payments at $433.33 each with credit given for $200 previously paid by the debtor.

The plaintiff does not request a determination of the debtor's continuing obligation to pay support. Of course, the debtor's obligations under paragraphs 6, 9, 11, and 14 of the Marital Dissolution Agreement have terminated as a result of the plaintiff's remarriage and bankruptcy. Even were the court so inclined, it could not, on the record before it, consider a modification of the debtor's continuing child support obligations under paragraphs 2 and 3 of the Marital Dissolution Agreement. There is no proof of the expenses associated with the current support and maintenance of the child. If the debtor has grounds under Tennessee law to seek a modification of his child support obligation, either as to the monthly support amount or the amount fixed for medical expenses, he should seek relief in the state court.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate judgment will be entered.