In re John Paul **FITZGERALD,** Debtor.

Jean A. **FITZGERALD,**
Plaintiff–Appellee,

v.

John Paul **FITZGERALD,**
Defendant–Appellant.

No. 92–6520.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 20, 1993.

Decided Nov. 10, 1993.

518

Perry P. Paine, Jr. (briefed), Maryville, TN, for plaintiff-appellee.

Michael H. Fitzpatrick (briefed), Jenkins & Jenkins, Knoxville, TN, for defendant-appellant.

Before: KENNEDY and NORRIS, Circuit Judges; and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant-debtor John Paul Fitzgerald appeals the District Court's order holding that defendant's obligation to pay alimony was not discharged. The District Court reversed the order of the Bankruptcy Court which had discharged defendant's obligation to pay plaintiff Jean A. Fitzgerald, his former spouse, unpaid alimony as well as relieved him from making future payments. On appeal, defendant argues (1) that the District Court erred in finding that the "present needs" test of *Long v. Calhoun,* 715 F.2d 1103 (6th Cir.1983), was inapplicable in the present case and (2) that the District Court erred in reversing the Bankruptcy's Court's finding that plaintiff was self-supporting at the time of the divorce.

## I.

The following facts are not in dispute. Plaintiff and defendant were married on June 28, 1969. They had no children. They separated on November 19, 1980. On December 21, 1982, defendant filed for divorce in the Circuit Court for Blount County, Tennessee. On July 11, 1983, the parties entered into an "Agreement," which was incorporated by reference into the Final Decree of Divorce on July 15, 1983. In the Agreement, defendant agreed to pay plaintiff $1,500.00 per month as alimony, not to be reduced in the event she became gainfully employed, but to terminate upon her death or remarriage. The Agreement also provided that (1) the defendant would assist plaintiff with educational expenses, (2) each party would retain the automobiles, household goods and furnishings in his or her possession, (3) defendant would pay all marital debts, (4) defendant would pay plaintiff a lump sum of $14,000.00 within one year of the Agreement, (5) defendant would pay plaintiff's attorney's fee of $3,000.00, and (6) defendant would name plaintiff the irrevocable beneficiary of a life insurance policy. On July 15, 1983, the parties were granted an uncontested divorce. Both parties were represented by counsel in the divorce proceedings.

Defendant, now fifty-six years old, is an anesthesiologist. Plaintiff is forty-eight years old and has been a registered nurse for twenty-seven years. Throughout their marriage, plaintiff was the primary source of income while defendant pursued his medical training. They lived frugally during that

time with their goal being to put defendant through medical school and post-graduate specialty training. All else, including children and the purchase of a home were put on hold. After separating in November, 1980, plaintiff returned to school and in June, 1983, received her bachelor of science degree in nursing. Defendant began his medical practice in August, 1982.

Plaintiff testified that during their separation, defendant told her that he could not have gone to medical school without her support; that he wanted her to be comfortable; that she did not have to work if she did not want to; and that he wanted her to have the standard of living that they had anticipated achieving with the start of his medical practice. Defendant's testimony was consistent with plaintiff's account. Both parties intended that the Agreement obligation to pay $1,500 a month was for support and the defendant further testified that he understood the term "alimony" in the Agreement.

Defendant is currently practicing as an independent contractor for a regional hospital in Texas. Plaintiff is currently employed as head nurse at a University Medical Center in Tennessee. She has been so employed since 1983. Her current earnings are unascertained but her 1988 tax return indicates that she earned $32,261.00. Plaintiff estimates her monthly living expenses in 1983 at $688.00 and presently at approximately $2,500.00 per month. Defendant's gross earnings are $21,500 a month.[1]

On June 28, 1990, defendant filed for voluntary bankruptcy under Chapter 7, 11 U.S.C. § 701, et seq. Plaintiff brought an action seeking a determination that defendant's continuing obligation to pay monthly alimony pursuant to the divorce decree was nondischargeable under 11 U.S.C. § 523(a)(5) and that the alimony arrearage which had accrued since their divorce was similarly nondischargeable.

On March 20, 1992, the Bankruptcy Court held that the monthly alimony payments were not in the nature of support under 11 U.S.C. § 523(a)(5). Relying on the "present needs" test of *Calhoun*, the court found that

although the parties intended the obligation to be support, the monthly payments did not presently have the effect of providing necessary support. The court also stated that plaintiff was self-supporting at the time of the divorce. The court discharged defendant's obligation to pay both the arrearage ($90,250.00 through February, 1992) and all future payments.

Plaintiff appealed to the District Court arguing that the monthly payments constituted nondischargeable alimony payments under 11 U.S.C. § 523(a)(5). On October 23, 1992, the District Court reversed the Bankruptcy Court's order. The District Court held (1) that the Bankruptcy Court erred by applying the "present needs" test in the present case, and (2) that the Bankruptcy Court erred in finding that plaintiff was self-supporting at the time of the divorce because the evidence at trial established that she was unemployed at that time. Defendant appeals the order of the District Court. For the reasons stated below, we affirm.

## II.

Defendant argues that the monthly payments were not in the nature of support under 11 U.S.C. § 523(a)(5) because, as the Bankruptcy Court found, plaintiff does not presently need the payments for support. The District Court held that the so-called "present needs" test of *Calhoun*, 715 F.2d 1103, does not apply to the support obligation in this case because the obligation is designated as "alimony to" and intended by both parties to be "alimony to" and "support for" plaintiff.

The Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement,

---

1. Net taxable income for 1990 was $85,170.

divorce decree or other order of a court of record ..., but not to the extent that—
. . . .

    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....

11 U.S.C. § 523(a)(5)(B). In *Calhoun*, this Court provided an analytical framework for determining when obligations are "actually in the nature of alimony, maintenance, or support," and thus nondischargeable, when they are not designated as such. *Calhoun* involved a continuing obligation by a debtor to assume marital debts and hold harmless his former spouse. The *Calhoun* obligation was incurred as part of a divorce settlement. This Court first found that a hold harmless obligation could constitute nondischargeable support although not paid directly to the former spouse. Next, we announced a four-step analysis for determining whether an obligation, which was not designated alimony or maintenance, was nonetheless actually in the nature of support and nondischargeable. First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. 715 F.2d at 1109–10. The burden of demonstrating that an obligation is in the nature of support is on the non-debtor. 715 F.2d at 1111.

The applicability of *Calhoun*, especially the second step's "present needs" inquiry, to support obligations other than assumptions of debt has been the source of some confusion in the lower courts of this Circuit. Some courts have held, as did the District Court below, that *Calhoun* is limited to obligations to assume debts rather than conventional direct spousal or child support obligations such as alimony. *See, e.g., In re Gibson*, 157 B.R. 366 (Bankr.S.D.Ohio 1993).

Other courts have found *Calhoun* applicable to all actions under section 523(a)(5). *See, e.g., In re Wilburn*, 125 B.R. 759 (Bankr. E.D.Tenn.1991); *In re Matyac*, 102 B.R. 125 (Bankr.S.D.Ohio 1989); *In re Swiczkowski*, 84 B.R. 487 (Bankr.N.D.Ohio 1988); *In re Helm*, 48 B.R. 215 (Bankr.W.D.Ky.1985). Of these courts, while extending *Calhoun* to alimony and child support, some have limited the "present needs" inquiry to future obligations, finding arrearages for past due obligations nondischargeable without regard to the present needs of the obligee. *See, e.g., In re Brown*, 145 B.R. 239 (Bankr.N.D.Ohio 1992) (holding child support arrearages nondischargeable); *Wilburn*, 125 B.R. 759 (holding alimony arrearages nondischargeable); *Matyac*, 102 B.R. 125 (holding child support arrearages nondischargeable); *Swiczkowski*, 84 B.R. 487 (holding nondischargeable unpaid car payments); *In re Troxell*, 67 B.R. 328 (Bankr.S.D.Ohio 1986) (holding child support arrearages nondischargeable); *In re Rowles*, 66 B.R. 628 (Bankr.N.D.Ohio 1986) (holding past-due spousal obligations nondischargeable). We have found no case in which a court discharged past-due obligations that were intended as support by the state court or parties.

As the author of *Calhoun*, the writer regrets that it has been applied more broadly than intended. Fortunately, a majority of courts in other circuits have rejected the "present needs" test when applied to alimony or child support. *See, e.g., In re Gianakas*, 917 F.2d 759 (3d Cir.1990); *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987); *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984). *See also* Comment, *Striking the Needs Between Bankruptcy and Divorce: Developing a Standard for the Classification of Domestic Obligations Under Section 523(a)(5) of the Bankruptcy Code*, 7 BANKR.DEV.J. 565, 591 (1990) (survey indicates that a majority of circuits focus only on the intent of the parties at the time of divorce). Courts have criticized the "present needs" test on various grounds including that it permits undue federal interference with state court domestic authority, *Forsdick*, 812 F.2d at 803–04; that it punishes the non-debtor spouse who has struggled to become self-supporting, *Gianakas*, 917 F.2d at 763; and because the test

would result in the discharge of an overwhelmingly high number of support obligations because by the time a debtor files for bankruptcy, most former spouses will have become self-reliant, *see In re Chedrick*, 98 B.R. 731, 734 (W.D.Pa.1989). *Calhoun* was not intended to intrude into the states' traditional authority over domestic relations and the risk of injustice to the non-debtor spouse or children.

 Unlike *Calhoun*, where it was necessary to determine whether something *not* denominated as support in the divorce decree was really support, here the only question is whether something denominated as alimony is really alimony and not, for example, a property settlement in disguise. The alimony payments were to permit plaintiff to achieve a standard of living compatible with what she might expect were the marriage to continue. This is a long-standing standard for alimony where a spouse's assets or earning capacity justifies such an award. Bankruptcy law does not place a restriction on the state courts' ability to award alimony. As we stated in *Calhoun*, "[d]ivorce, alimony, support and maintenance are issues within the exclusive domain of the state courts." *Calhoun*, 715 F.2d at 1107 (citing *Boddie v. Connecticut*, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (Black, J., dissenting)). Other terms of the Fitzgerald agreement provided for the division of property and the payment of debts. The debtor here has not pointed to any factor which suggests that the alimony payments here were not alimony. They were to end upon the wife's remarriage or death, another conventional restriction on alimony.

When we stated in *Calhoun* that the "loan assumption should be treated, to the extent possible, the same as ordinary direct child support or alimony payments," we were not suggesting that alimony or support payments be reduced to necessary support. Rather, we were applying to loan assumptions a minimum standard ordinarily applied by state courts, holding that, to the extent loan assumptions exceed what a court would have awarded for alimony, maintenance or support, they are dischargeable.

Here, where no one disputes that these payments are anything except alimony payments, Congress has directed that they are not dischargeable. We need not decide whether plaintiff was or was not working at the time of the divorce since that fact does not change the nature of the payments here.

Accordingly, the judgment of the District Court is AFFIRMED.