In re Mark Allen ROUSE, Debtor.

Mark Allen ROUSE, Plaintiff,

v.

Mable I. ROUSE, Defendant.

Bankruptcy No. 97–31053.
Adversary No. 97–3041.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 8, 1997.

Rose Ellison, Tazewell, TN, for Plaintiff.

Robert M. Estep, Estep & Estep, Tazewell, TN, for Defendant.

## *MEMORANDUM ON CROSS–MOTIONS FOR SUMMARY JUDGMENT*

RICHARD S. STAIR, Jr., Chief Judge.

The Debtor, Mark Allen Rouse, commenced this adversary proceeding on April 25, 1997, with the filing of a Complaint seeking a determination that an obligation he owes to the Defendant, Mable I. Rouse, arising from a March 20, 1997 Order of the Chancery Court of Claiborne County, Tennessee, is not excepted from discharge pursuant to 11 U.S.C.A. § 523(a)(5) (West 1993 & Supp.1997). The court now has before it cross-motions for summary judgment. The Debtor filed a Plaintiff's Motion for Summary Judgment on July 29, 1997. The Defendant filed a Motion for Summary Judgment on July 31, 1997. The Defendant also filed a Response to Plaintiff's Motion for Summary Judgment on August 13, 1997, while the Debtor filed a Response to Defendant's Motion for Summary Judgment on August 19, 1997. The summary judgment motions are supported by documents and affidavits executed by Mark Allen Rouse and Mable I. Rouse.[1]

---

1. A number of the documents submitted in sup-     port of the summary judgment motions are unau-

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 1993).

## I

The parties entered into a Marital Dissolution Agreement on December 27, 1994. Paragraph One of the Marital Dissolution Agreement provides:

1. The Wife shall have custody of the parties' two (2) minor children, subject to reasonable and liberal visitation to the Husband upon him giving notice to the Wife of his desire to exercise the same.

The Husband shall pay Two Hundred Fifty Dollars ($250.00) per month as child support, not pursuant to state guidelines, the same to begin January 15, 1995[,] and each month thereafter by the 15th. The parties cannot modify said child support amount without Court approval.

The Husband shall be responsible for the insurance premiums on said children. The medical and dental expenses not covered by said insurance shall be divided equally between the parties.

The Wife shall claim Morgan Elizabeth for federal tax purposes and the Husband shall claim Jacob Allen for federal tax purposes.

In January 1995, the parties executed a Supplemental Marital Dissolution Agreement to supplement the December 27, 1994 Marital Dissolution Agreement.[2] Paragraphs Three and Four of the Supplemental Marital Dissolution Agreement provide:

3. The parties further agree that the cost of the insurance premium on the parties' two (2) minor children shall be equally divided between them and all other conditions set out in the original Marital Dissolution Agreement shall be given full force and effect.

4. The parties further agree that the child care expenses of the parties' two (2) minor children shall be equally divided between the parents.

The Marital Dissolution Agreement, as modified by the Supplemental Marital Dissolution Agreement, was incorporated into the Final Decree of divorce entered by the Chancery Court for Claiborne County, Tennessee, on February 8, 1995.

On March 20, 1997, the Chancery Court for Claiborne County, Tennessee, entered an Order which provides in material part:

4. Defendant [Mark Allen Rouse] shall pay to Plaintiff [Mable I. Rouse] child support in the sum of Three Hundred ($300.00) per month payable on the first day of each month commencing January 1, 1997. . . .

5. Defendant shall pay to Plaintiff on or before the 15th day of each month the sum of Thirty Five Dollars Eighty Six Cents ($36.86) [sic] representing one-half of medical insurance premium on the policy Plaintiff maintains for the benefit of the minor children. . . .

6. That on or before the 15th day of each month, Defendant shall pay to Plaintiff one-half of the day care costs for the parties' minor children. . . .

7. That all medical expenses not paid by insurance shall be paid one-half by each party. . . .

8. That Plaintiff is hereby awarded judgment against the Defendant, Mark Allen Rouse, in the sum of One Thousand Eight Hundred Ninety Three Dollars Fifty Seven Cents ($1,893.57), representing insurance premiums Defendant failed to pay, and a judgment for the sum of Nine Hundred Ninety Seven Dollars Thirty Eight Cents ($997.38), representing one-half of medical expenses and day care expenses Defendant failed to pay, for a total judgment of Two Thousand Eight Hundred Ninety Dollars Ninety Five Cents ($2,890.95).

---

thenticated documents from the record of a state court divorce proceeding between the parties. The authenticity of these documents is, however, stipulated by the parties in the Pre–Trial Order governing the trial of this proceeding which was entered on July 7, 1997.

2. The Defendant signed the supplemental agreement on January 25, 1995, while the Debtor signed the agreement on January 27, 1995.

## II

The Debtor does not dispute that his monthly child support obligation in the amount of $300.00 is nondischargeable, but contends that the judgment awarded to the Defendant in Paragraph Eight of the March 20, 1997 Order of the Chancery Court for Claiborne County, Tennessee, is not excepted from his discharge pursuant to § 523(a)(5), which provides in material part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C.A. § 523(a)(5) (West 1993 & Supp. 1997). Although the Debtor initiated this proceeding, the Defendant bears the burden of proving nondischargeability under § 523(a)(5) by a preponderance of the evidence. *See Henderson v. Henderson (In re Henderson)*, 200 B.R. 322, 324 (Bankr. N.D.Ohio 1996); *Williams v. Williams (In re Williams)*, 189 B.R. 678, 679 (Bankr. N.D.Ohio 1995). Ordinarily, the exceptions to discharge are to be strictly construed against the creditor. *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988). "One exception to this principle of statutory construction is found in section 523(a)(5), in which the term 'support' has been given a broad construction by most courts to promote the Congressional policy that favors enforcement of obligations for spousal and child support. In this respect, Congress has overridden the general bankruptcy policy in which exceptions to dis-

charge are construed narrowly." 4 Collier on Bankruptcy ¶ 523.05 (15th ed. rev.1997).

To resolve the issue before the court, it is necessary to understand the approach developed by the Sixth Circuit in analyzing § 523(a)(5). This approach is set forth in the cases of *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), and *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir.1993). *Calhoun* involved a couple who entered into a separation agreement whereby Clarence Calhoun assumed five obligations incurred jointly by the couple during their marriage. The separation agreement was incorporated into a divorce decree that dissolved the marriage. When Clarence Calhoun subsequently filed a petition under Chapter 7 of the Bankruptcy Code, his former wife, Jo Ann Long, commenced an adversary proceeding to determine whether the five obligations assumed by Mr. Calhoun in the separation agreement were nondischargeable pursuant to § 523(a)(5). The bankruptcy court granted summary judgment in favor of Ms. Long, holding that the five obligations were nondischargeable. Mr. Calhoun appealed to the Sixth Circuit. The issue before the court was whether the assumption of the joint obligations by Mr. Calhoun was "in the nature of alimony, maintenance, or support" pursuant to § 523(a)(5) or whether it was a dischargeable property settlement.

The Sixth Circuit set forth a four-part test to analyze the issue. *Calhoun*, 715 F.2d at 1108–1110. First, it must be determined whether the parties or the state court issuing the divorce decree intended to create a support obligation. *Id.* at 1109. If not, further inquiry is unnecessary and the obligation is to be discharged. *Id.* If a support obligation was intended, then it must be determined whether the obligation "has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id.* Again, no further inquiry is necessary if the obligation does not have such an effect. *Id.* Otherwise, courts must next determine whether the obligation is "so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110. If so, courts must place reasonable limits on the

nondischargeability of the obligation. *Id.* If not, the entire obligation is nondischargeable. Based upon this analysis, the Sixth Circuit concluded that the bankruptcy court applied an incorrect legal standard, reversed the lower court's decision, and remanded the case for further proceedings. *Id.* at 1111.

*Fitzgerald* involved a couple that entered into an Agreement by which John Paul Fitzgerald agreed to pay Jean A. Fitzgerald, among other things, $1,500.00 per month. Not only was this obligation expressly designated as alimony in the Agreement, but both parties to the Agreement intended the obligation to be for the purpose of support. The Agreement was incorporated by reference into a Final Decree of Divorce. Thereafter, John Paul Fitzgerald filed a petition under Chapter 7 of the Bankruptcy Code and Jean A. Fitzgerald commenced a proceeding seeking a determination that the alimony obligation and an arrearage on that obligation were nondischargeable pursuant to § 523(a)(5). Relying on the second step of the *Calhoun* analysis, the so-called "present needs" test, the bankruptcy court discharged both the monthly alimony obligation and the arrearage. On appeal, the district court reversed the bankruptcy court, finding that it erred in applying the "present needs" test. The debtor appealed to the Sixth Circuit.

Given that ten years had elapsed since *Calhoun*, the Sixth Circuit seized the opportunity to clarify its earlier decision.

The applicability of *Calhoun*, especially the second step's "present needs" inquiry, to support obligations other than assumptions of debt has been the source of some confusion in the lower courts of this Circuit. Some courts have held, as did the District Court below, that *Calhoun* is limited to obligations to assume debts rather than conventional direct spousal or child support obligations such as alimony. Other courts have found *Calhoun* applicable to all actions under section 523(a)(5)....

As the author of *Calhoun*, the writer regrets that it has been applied more broadly than intended. Fortunately, a majority of courts in other circuits have rejected the "present needs" test when applied to alimony or child support.

*Fitzgerald*, 9 F.3d at 520 (citations omitted). The court went on to articulate that the *Calhoun* analysis did not apply in situations such as the one before it where "the only question is whether something denominated as alimony is really alimony and not, for example, a property settlement in disguise." *Id.* at 521. Instead, *Calhoun* was limited to those situations "where it [is] necessary to determine whether something not denominated as support in the divorce decree [is] really support." *Id.* Because the Agreement expressly designated the $1,500.00 obligation of Mr. Fitzgerald as alimony, the court did not apply *Calhoun*. Instead, it looked only to whether the alleged alimony obligation was truly what it purported to be. Since neither Mr. nor Mrs. Fitzgerald contended that the $1,500.00 monthly obligation was anything other than alimony, the Sixth Circuit concluded that the obligation was a nondischargeable alimony obligation and affirmed the decision of the district court. *Id.*

Similar to the Sixth Circuit in *Fitzgerald*, this court is confronted with an obligation other than the assumption of joint debt. This proceeding, however, is distinguishable from *Fitzgerald* in that the Debtor's obligation is not specifically "denominated" as child support in either the March 20, 1997 Order of the Chancery Court for Claiborne County, Tennessee, or the December 27, 1994 Marital Dissolution Agreement, as modified by the January 1995 Supplemental Marital Dissolution Agreement. Because this court is not faced with the sole question of whether an obligation denominated as child support is truly child support and not a property settlement in disguise, *Fitzgerald* dictates that the *Calhoun* analysis must be applied.[3]

---

3. The Court finds it incongruous that it is required to apply the *Calhoun* analysis in this proceeding. Rather, it is this court's opinion that a parent's obligation to provide medical insurance, to pay medical and dental expenses, and to pay child care expenses for a minor child constitutes an obligation of support as a matter of law. *See Rose Funeral Home, Inc. v. Julian*, 176 Tenn. 534, 144 S.W.2d 755 (1940); *Stair v. Shumate (In re Shumate)*, 39 B.R. 808 (Bankr.E.D.Tenn. 1984). The ultimate beneficiary of such an obligation is, in every instance, the minor child.

Under *Calhoun*, the threshold issue is whether the parties or the state court entering the divorce decree intended to create a support obligation. *Calhoun*, 715 F.2d at 1109. In making such a determination, bankruptcy courts may look to factors used by state courts to ascertain such intent. *Id.* Such factors that are material to this proceeding include: "the nature of the obligations assumed (provision of daily necessities indicates support) [and] the structure and language of the parties' agreement or the court's decree." *Id.* at 1108 n. 7. The record conclusively establishes that the parties, by their December 27, 1994 Marital Dissolution Agreement, as modified by the January 1995 Supplemental Marital Dissolution Agreement, intended to create a child support obligation by requiring the Debtor to pay one-half of the child care expenses, insurance premiums, and medical expenses for his children. First, it is abundantly clear that these expenses relate solely to the support of the children. Moreover, although these obligations are not expressly designated as child support, the court notes that the obligation to contribute to the insurance premiums and the medical expenses for the children, as recited in the Marital Dissolution Agreement, are included within the same paragraph that creates an express child support obligation of $250.00 per month and delineates which parents are entitled to claim which children as dependents for federal tax purposes. Every aspect of this paragraph pertains to issues regarding the children and the parties' rights and obligations arising from their support. Finally, the obligations assumed by the Debtor are in the nature of daily necessities, which further indicates that they were intended to be support obligations. For these reasons, the court is satisfied that the parties intended for the Debtor's obligation to contribute to certain medical, insurance, and child care expenses of his children

to be a support obligation as opposed to a property settlement.

The second step of the *Calhoun* analysis is the infamous "present needs" test. *Id.* However, because this proceeding seeks to determine the dischargeability of an arrearage on an obligation intended for the purposes of support, the remaining *Calhoun* factors are immaterial. *Fitzgerald* suggests that once it is determined that an obligation was intended to be a support obligation, any arrearage on such an obligation is nondischargeable. *See Fitzgerald*, 9 F.3d at 520 (stating, with no disapproval, that "[w]e have found no case in which a court discharged past-due obligations that were intended as support by the state court or parties"); *Pinkstaff v. Pinkstaff (In re Pinkstaff)*, 163 B.R. 504, 508–09 (Bankr.N.D.Ohio 1994) ("[B]ankruptcy courts in this circuit have found the searching inquiry set forth in *Calhoun* inapposite to the determination of whether an arrearage on an obligation in the nature of support ... is nondischargeable.") (citing *Fitzgerald*, 9 F.3d at 520; *Gibson v. Gibson (In re Gibson)*, 157 B.R. 366, 371 (Bankr.S.D.Ohio 1993); *McArtor v. Rowles (In re Rowles)*, 66 B.R. 628, 631 (Bankr. N.D.Ohio 1986)); *see also Leslie v. Leslie (In re Leslie)*, 181 B.R. 317, 323 (Bankr.N.D.Ohio 1995) (citing *Fitzgerald*, 9 F.3d at 520; *Pinkstaff*, 163 B.R. at 508). This is simply logical since a present needs analysis is immaterial to past-due obligations.[4] To hold otherwise would encourage debtors to incur support arrearages with the hope of discharging such obligations once the non-debtor spouse no longer depended upon such support.[5] As such, the court's analysis of the § 523(a)(5) issue is complete and the obligation incurred by the Debtor in the March 20, 1997 Order of the Chancery Court for Claiborne County, Tennessee, is nondischargeable.

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment, filed by the

Nevertheless, as the Debtor's obligation under the parties' Marital Dissolution Agreement in not "denominated" as support, the court must perform the *Calhoun* analysis.

4. If any needs analysis were required, it should be the needs of the non-debtor spouse at the time that the obligations were due.

5. Immediately after noting that "[c]ourts have criticized the 'present needs' test on various grounds including ... that it punishes the non-debtor spouse who has struggled to become self-supporting," *Fitzgerald* made it clear that "*Calhoun* was not intended to ... [create] the risk of injustice to the non-debtor spouse." *Fitzgerald*, 9 F.3d at 520–21.

Debtor on July 29, 1997, will be denied and the Defendant's Motion for Summary Judgment filed July 31, 1997, will be granted. An appropriate order will be entered.

### ORDER

For the reasons set forth in the Memorandum on Cross–Motions for Summary Judgment filed this date, the court directs the following:

1. The Plaintiff's Motion for Summary Judgment filed by the Debtor, Mark Allen Rouse, on July 29, 1997, is DENIED.

2. The Motion for Summary Judgment filed by the Defendant, Mable I. Rouse, on July 31, 1997, is GRANTED.

3. The $2,890.95 judgment awarded to the Defendant pursuant to a March 20, 1997 Order of the Chancery Court of Claiborne County, Tennessee, in the matter styled *Mable I. Rouse v. Mark Allen Rouse,* No. 10,-467, representing the arrearage on insurance, medical, and day care payments owed by the Debtor to the Defendant pursuant to the February 8, 1995 Final Decree of the Chancery Court of Claiborne County, Tennessee, is nondischargeable under the authority of 11 U.S.C.A. § 523(a)(5) (West 1993 & Supp.1997).

SO ORDERED.