NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0028n.06

No. 14-5735

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 08, 2015
DEBORAH S. HUNT, Clerk

In re: JAMES ALBERT THOMAS; REBECCA )
MARIE THOMAS, )
)
    Debtors. )
-------------------------------------------------------------------- )
)
)
JAMES ALBERT THOMAS; REBECCA MARIE )
THOMAS, )
)
    Appellants, )
v. )
)
JENNIFER CLARK, )
)
    Appellee. )

ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

Before: SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. James and Rebecca Thomas appeal the bankruptcy court's determination that certain debts James owes to his ex-wife Jennifer Clark are domestic-support obligations and therefore nondischargeable in bankruptcy. We affirm.

James Thomas (hereafter "Thomas") and Jennifer Clark married in 1995 and had two children together. In 1999, they bought a family home in Ironton, Ohio with a loan secured by a mortgage. They took out a second mortgage on the house in 2001. In 2003, they divorced in Ohio state court. The divorce decree required Thomas to pay Clark $510 per month in child support, and to convey to Clark his interest in the family home. The decree also required Clark

to pay both mortgages on the home, but did not otherwise require Thomas or Clark to pay spousal support.

Thomas and Clark remarried each other a year later, but divorced again in 2007. The second divorce decree gave Clark primary custody of the children, required Thomas to pay Clark $369 per month in child support, and required Clark to pay the first mortgage. In addition, this decree required Thomas and Clark to make equal payments on the second mortgage, but provided that Clark would receive all proceeds from a sale of the home. As with the first divorce, neither spouse owed the other spousal support.

Thomas did not make any payments on the second mortgage. Just over a year after the second divorce, Clark sold the family home. At that point, Clark discovered that a company called Auto Now had a judgment lien on the home because Thomas had failed to make payments on his car. Clark used all of the sale proceeds to pay off Auto Now's lien as well as the first and second mortgages.

Clark later sued Thomas through the divorce action to collect on various debts, including past-due child support. The court noted that Thomas had caught up on his child-support payments, but ordered Thomas to reimburse Clark for his share of the second mortgage ($7,500) and for the judgment lien ($5,000). R. 52 at 38.

Rather than reimburse Clark, however, Thomas and his second wife Rebecca filed a joint petition for Chapter 13 bankruptcy. Clark filed a proof of claim for $12,500—the amount of the mortgage and lien debts. Thomas and his wife objected, arguing that the claim improperly treated those debts as domestic-support obligations, which are nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). The bankruptcy court held a hearing and ruled that the debts were

domestic-support obligations. The Bankruptcy Appellate Panel of the Sixth Circuit affirmed. This appeal followed.

Although our review follows that of the Bankruptcy Appellate Panel, we review the bankruptcy court's decision. *See In re United Producers, Inc.*, 526 F.3d 942, 946 (6th Cir. 2008). We review for clear error the bankruptcy court's factual determination that a debt is a nondischargeable support obligation. *In re Sorah*, 163 F.3d 397, 400 (6th Cir. 1998).

Thomas first challenges the bankruptcy court's finding that the lien and mortgage debts are "in the nature of support." To qualify as a domestic-support obligation, a debt must be, among other things, "in the nature of alimony, maintenance, or support . . . of [a] spouse, former spouse, or child of the debtor . . . , without regard to whether such debt is expressly so designated[.]" 11 U.S.C. § 101(14A)(B). A debt is "in the nature of support" if two conditions are met: first, "the state court or parties intended to create a support obligation"; and second, the debt has "the actual effect of providing necessary support." *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir. 1993).

Here, the bankruptcy court properly examined the language and structure of the two divorce decrees to determine whether the mortgage debt is in the nature of support. *See In re Calhoun*, 715 F.2d 1103, 1107-09 & n.7 (6th Cir. 1983). The first decree ordered Thomas to pay more child support than the Ohio guidelines required. The state court said that this "deviation is in the best interests of the children as [Clark] is paying both mortgages on the marital property." R. 51 at 25. In the second decree Thomas was ordered to pay less child support, but was also ordered to pay half of the second mortgage. This change suggests that the mortgage payments were intended to provide necessary support in the form of keeping Clark and the children in the family home.

Clark's testimony strengthens that inference. Clark said that she and Thomas had wanted the children to remain in the family home so that her parents—who lived next door—could provide child care. She also said that she could not afford to pay both mortgages without Thomas's help. Thus, the bankruptcy court did not clearly err in finding that the parties and the state court intended that the mortgage debt would serve as a support obligation, and that the debt actually provided necessary support.

Thomas offers several responses. He first contends that no support obligation was intended because neither decree expressly provided for spousal support. By the express terms of § 101(14A)(B), however, the state court's label for an obligation does not determine whether the obligation is in the nature of support. *See* 11 U.S.C. § 101(14A)(B); *see also Calhoun*, 715 F.2d at 1111. Instead, the bankruptcy court should look to the nature of the obligation to determine if it was actually meant for support. *See Calhoun*, 715 F.2d at 1107. Thomas also asserts that the second divorce decree contemplated a sale of the family home. But he offers no evidence to refute Clark's testimony that, at the time of the divorce, she and Thomas intended for the children to stay in the home.

Thomas next contends that the mortgage debt was not necessary for domestic support, because Clark was employed as a surgical technician (she made $16.00 per hour) and because she sold the house years before Thomas filed for bankruptcy. But again Thomas does not refute Clark's testimony that she could not afford to pay the second mortgage on her own. In addition, as the bankruptcy court observed, the likely reason why the state court ordered that Clark would receive all proceeds from a sale of the home was to allow her to use that money to buy a new home for her and the children. And when Thomas failed to pay his portion of the second mortgage, he decreased the amount of money available for her to do so. Indeed, Clark received

no money from the home's sale after she paid off the mortgages and the lien; she ended up owing more than $800. R. 50-2 at 4.

Finally, Thomas says that he was unemployed at the time of the second divorce and could not afford to pay the debt. But Thomas's employment status does not change the debt's nature as a support obligation. *See Fitzgerald*, 9 F.3d at 521. Thus, the bankruptcy court did not clearly err in finding that the mortgage debt was in the nature of support.

As to the lien debt, Clark testified that neither she, nor the state court, knew about the judgment lien at the time of the divorce. But the lien also reduced the amount of money that Clark received from the sale of the family home. As shown above, the state court likely intended that Clark receive that money to buy a new home. Thus, the lien—which was attached to the family home, after all—reduced the amount of support that the state court meant to be available to Clark and the children. That means the bankruptcy court did not clearly err in finding that the lien debt was likewise in the nature of support.

Thomas next argues that the debts should be dischargeable because they are excessive. When a debt is in the nature of support, the full debt is nondischargeable unless the debt "is so excessive as to be unreasonable under traditional concepts of support." *See id.* at 520. The debt is only unreasonable if it "substantially exceed[s]" the debtor's present and foreseeable ability to pay at the time the debt is assumed. *See Calhoun*, 715 F.2d at 1110. Here, there is no evidence that any of the state court orders imposed an excessive financial burden on Thomas. Clark testified that their incomes were roughly equal, apparently despite Thomas's occasional lay-offs. The child-support worksheets that accompany both divorce decrees support her testimony. Finally, as the bankruptcy court noted, the total debt amount is relatively low. Thus, the bankruptcy court did not clearly err in finding that the debt amounts are reasonable.

Finally, Thomas objects to the proof of claim on the ground that it was filed against his co-debtor Rebecca as well as Thomas. He says that Rebecca is not responsible for the debts. But Thomas did not offer any authority or other support for this objection to this court, the Bankruptcy Appellate Panel, or the bankruptcy court. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (internal quotation marks omitted). We therefore decline to consider this argument.

The bankruptcy court's judgment is affirmed.