# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

_____

**TAMARA KAY WILLIAMS EMISON,**

    Appellee,

Vs.

**RANDY JOE EMISON,**

    Appellant.



Crockett Chancery No. 7365
C.A. No. W1998-00591-COA-R3-CV
**December 27, 1999**

Cecil Crowson, Jr.
Appellate Court Clerk

_____

## FROM THE CROCKETT COUNTY CHANCERY COURT

## THE HONORABLE GEORGE R. ELLIS, JUDGE

Middlebrooks & Gray, P.A., of Jackson
For Appellee

L. L. Harrell, Jr.; Harrell & Harrell of Trenton
For Appellant

## *REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This case concerns the division of property, allocation of marital debts, alimony, child support, and life insurance as security for child support. Defendant-appellant, Randy Joe Emison (Husband), appeals from the judgment of the trial court granting an absolute divorce to plaintiff-appellee, Tamara Kay Emison (Wife).

The parties were married on July 12, 1985. There were two children born of this marriage, Randa Joanne Emison, born June 23, 1986 and Randy Joe Emision Jr., born April 18, 1988. Husband had one previous marriage, and there are no previous marriages by Wife. At the time of trial, Wife was 36 years old, and Husband was 37years old.

In the early years of the marriage Wife held several short term jobs, but has stayed at home for most of the marriage. Wife received an associates degree in office administration in May of 1997. At the time of trial Wife was employed as a bookkeeper at Fletcher Equipment in Burlison, Tennessee, with a net income of approximately $1,100.00 per month. Wife testified that expenses for herself and two minor children are $2,199.00 per month.

Husband completed high school. From the beginning of the marriage through February of 1997 Husband was a self employed truck driver. Husband then went to work for his brother. At the time of trial Husband testified that he worked for his stepmother making $410.00 per week, and that his monthly expenses were $2,080.03. Tax returns indicate that Husband's income was $54,059.00 in 1994, $41,715.00 in 1995, and $29,755.00 in 1996. Husband attributed his loss of income to the sale of his truck to his brother for $19,500.00 in March of 1997.

Wife filed her complaint for divorce in Madison county on September 4, 1997 on the grounds of irreconcilable differences and inappropriate marital conduct. Wife asserts that from the time that Husband began an extra-marital relationship with Lisa Mauldin in January 1996 he began transferring assets from himself to his father, brother, and step-mother. Husband admits to the extra-marital affair from January of 1996 through September of 1996, but asserts that Wife found out about the affair in October 1996, approximately one year prior to filing for a divorce. Husband contends that he admitted

to the affair and that the parties subsequently continued a physical marital relationship. Husband asserts that the parties went for counseling and that although Wife denied that the reason she wanted a divorce was because Husband did not make enough money, she claimed to have forgiven him for the affair.

The parties separated on September 21, 1997. Husband made a motion to dismiss based on lack of venue, and divorce was transferred to Crockett county. By order of December 16, 1997 the court awarded temporary custody of the children to Wife and ordered Husband to pay child support of 104.00 per week, plus clerk's fee of $5.20, for a total of $109.20 per week. By the same order Husband was ordered to pay the mortgage payment on the former marital residence as alimony until the house was sold. On January 12, 1998 Husband was found in wilful contempt of the court order and was in arrears in payment of the home mortgages in the amount of $3,445.00. The court ordered that the Husband be held in jail until payment of the arrearage amount or such other sum as satisfactory to the Bank of Crockett to prevent foreclosure proceedings. Husband's father paid an amount sufficient to have Husband released from jail. At the closing of the sale of the marital home the mortgage payments were five months in arrears.

After a non-jury trial, the court awarded Wife an absolute divorce from the Husband on the grounds of inappropriate marital conduct and awarded custody of the two minor children to Wife with visitation according to the shared parenting plan as stipulated by the parties. The trial court found Husband to be underemployed and ordered child support of $192.00 plus commission per week to be paid by Husband by wage assignment. The trial court further ordered Husband to maintain health insurance on the minor children, and the parties were to split equally all medical, dental, optical, and psychological expenses above the deductible not covered by insurance. Husband was ordered to take out a life insurance policy for the benefit of the minor children in the amount of $100,000.00 until each child reaches 18 years of age. The court ordered that the parties shall own the real estate located at Cherokee Heights as tenants in common.

As to the division of personal property the court awarded Husband property

valued at $40,185.00, and the Wife property valued at $14,805.00. In addition the Wife was awarded $25,380.00 as alimony *in solido*, which the court found represents the difference between the value of personal property received by Husband and Wife. As to funds receive by the parties as a result of Wife's car accident, the court ordered that Husband receive an amount of $648.88 (which represents one-half of the marital funds spent on Wife's medical bills as a result of her accident) to be credited against the award of $25,380.00 as alimony *in solido*. The trial court ordered that Husband assume the debt to Volunteer Bank in the amount of $19,500.00, and to hold Wife harmless from any liability therefor. The court also ordered that this is a support obligation and nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523 (a)(5). The court further ordered that Wife shall receive the remaining funds received as a result of the car accident (3 checks totaling $6,939.93). The court awarded as alimony *in solido* the sum of $6,298.27 to be paid by Husband to Wife's attorney. Wife was also granted as alimony *in solido* the sum of $25,000.00 as a judgment against Husband. In addition Wife was granted a judgment of one-half of all payments, interest, late charges and fees that have accrued on the parties' house note since November 5, 1997 in the amount of $1,404.58. Husband was ordered to pay the costs of the cause. Trial court further ordered that it retained jurisdiction to modify support in the event of Husband's filing bankruptcy. Husband has appealed and presents seven issues for review.

I. Did the trial court err in the setting of child support in the amount of $192.00 per week, plus clerk's commission?

II. Did the trial court err in the division of personal property between the parties?

III. Did the trial err in awarding plaintiff a judgment for $25,000.00 and in making said judgment a non-dischargeable debt in bankruptcy by classifying same as support pursuant to 11 U.S.C. § 523 (a)(5)?

IV. Did the trial court err in awarding the plaintiff a judgment in the amount of $25,380.00 as alimony *in solido*, which sum represented the difference between the value of personal property received by the Husband and that received by the Wife?

V. Did the trial court err in ordering the defendant to assume the debt owing to Volunteer Bank and in making same a part of plaintiff's support so as to be non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523 (a) (5)?

VI. Did the trial court err in awarding the Wife as alimony *in solido*

4

the sum of $6,298.27 for attorney's fee?

VII. Did the trial court err in ordering the defendant to maintain life insurance on himself in the amount of $100,000.00 as security for payments to be made by the defendant for the support and maintenance of the children?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13 (d). (Tenn. App. 1995).

Husband's first issue is whether the trial court erred in setting the child support in the amount of $192.00 per week, plus court clerk's commission. Husband asserts that when the costs of operating his trucks is considered, his reported income is not nearly as great as it appears on paper. Husband argues that evidence offered by Wife inflates his income by including the depreciation taken on the equipment. However we agree with Wife that according to the child support guidelines promulgated by the Tennessee Department of Human Services depreciation is not considered a reasonable expense.

With regard to gross income, the child support guidelines provide that "[i]ncome from self-employment includes income from business operations and rental properties, ect., less reasonable expenses necessary to produce such income . Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses, ect., should not be considered reasonable expenses..." Tenn. Comp.R. & Regs., CH. 1240-2-4-.03(3) (a) (1994).

As to Husband's income Wife contends that Husband began transferring assets from himself to his father, brother, and stepmother intentionally lowering his reported income. Wife asserts Husband had been self-employed from the beginning of the marriage until March of 1997, at which time he began to work for his brother. Wife asserts that after transferring his truck to his brother the truck earned $76,006.97 in 1997, doing the same type work performed while Husband owned the truck. Wife asserts that in November of 1997 Husband represented to the court that his income was $1,773.33 per month, while in July of 1997 Husband signed a business loan agreement

5

with Bank of Crockett representing his income as $4,187.88.

The court in *Garfinkel v. Garfinkel*, 945 S.W. 2d 744 (Tenn. Ct. App. 1996) held that "[i]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." *Id.* at 748 (citing Tenn.Comp.R. &Regs., ch. 1240-2-4-.03 (3) (d) (1994). The *Garfinkel* court noted the decision on appeal in *Ford v. Ford*, No. 02A01-9507-CH-00153, 1996 WL 560258 (Tenn. Ct. App. Oct.3, 1996) where the court held that the term "willfully" in the child support guidelines does not mean that income may only be imputed to the husband when he is found to be purposefully trying to avoid child support obligations. *Id.* at 748 (citing *Ford* at *3). In *Ford* the court remanded the case to the trial court and ordered a recalculation of child support based on husband's "potential income, considering his educational background and previous work experience." *Id.* at 748 (citing *Ford* at *3). Following the reasoning of the *Ford* court, the *Garfinkel* court affirmed the trial court[1] stating the child support was correctly calculated based on Husband's potential income considering his educational background and earnings before he decided to discontinue employment.

The court in *Herrera v. Herrera*, 944 S.W.2d 379(Tenn. Ct. App. 1996), agreed with the proposition that when an obligor is willfully and voluntarily underemployed or unemployed, child support should be determined by a calculation of obligor's potential income, based on education and prior work experience. *Herrera*, 944 S.W.2d at 387 (citing Tenn. Comp.R. & Regs. 1240-2-4-.03(3)(c) (1991). The court in *Herrera* remanded the case to the trial court for a determination of Dr. Herrera's monthly income potential, finding "that the trial court erred in not making a determination as to Dr. Herrera's monthly income potential and in setting the child support obligation." *Id.*

In accordance with the ruling in *Herrera* and with the rulings of *Ford* and *Garfinkel* in mind, we are of the opinion that the trial court erred in not making a specific determination as to Husband's monthly income potential and in setting the child support

---

[1] The trial court ordered husband to pay $900.00 per month child support based on his last reported income of $40,000.00 in 1983, his educational level, and his annual income from rental properties.

6

obligation. Consequently, the case should be remanded to the trial court for a determination of Husband's monthly income potential. The child support shall remain $192.00 per week until otherwise ordered.

Husband's second issue is whether the trial court erred in the division of personal property between the parties.

In dividing the property the trial court found that the sale of the tractor, the fishing boats, the trailer, two trucks, a box blade, and the truck that Husband currently drives were not arm's lengths transactions and that these items shall be credited to Husband. The court's order states that Husband agreed to take the Clark Michigan front-end loader and assume the indebtedness to Volunteer Bank, the only indebtedness that the parties had at the time of the order, and hold the Wife harmless.

The Husband advances no argument as to the division of the property, rather Husband argues that the values used do not reflect the present value, which was given by Husband. Instead, values used were given by Wife and reflect what Wife claims that Husband told her the items were worth or reflect the value of the item when new. Husband contends that there was no finding by the court as to why the values submitted by Wife were favored over those submitted by Husband. Husband asserts that the award to Wife was $105,157.20 and the award to Husband was a negative $29,244.39. Husband disputes Wife's assessment as to the value of the shop equipment at $15,000.00, stating that she had no actual knowledge of its fair market value. Husband urges that value of the shop equipment is $225.00. The record reveals that Wife testified that the value of the shop equipment was based on Husband's statement to Wife at the time that the parties insured the shop.

The value of marital assets is determined by considering all relevant evidence of value. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997) (citing *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993) (citations omitted)). The burden to prove the value of the assets is on the parties through production of evidence and parties are bound by the evidence that they produce. *Id.* It is within the discretion of the trial court to place a value on the assets within the range of the evidence submitted by parties. *Id.*

Since the value of assets is a question of fact, the presumption on appeal is that the trial court's valuation is correct. *Watters*, 959 S.W. 2d at 589; *see also Smith v. Smith*, 912 S.W. 2d 155, 157 (Tenn. Ct. App. 1995). We find that the values given to assets are within the range of the evidence given as they reflect the testimony and assertions of Wife. The Husband claims that there is no showing that the Husband has any assets that were not accounted for and further that a detailed account was given by the Husband as to what was done with all property sold and where all funds received were applied. However, we do not find that the record indicates that the trial court failed to consider all evidence when making its decision, rather that the court, within its discretion, found the testimony of the Wife more creditable than that of the Husband. When the resolution of issues in a case depends upon the truthfulness of a witnesses, the trial court judge, who has had the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than a court of appeal to decide those issues. *McCaleb v. Saturn Corp.,* 910 S.W. 2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W. 2d 834, 837 (Tenn. Ct. App. 1997). The record supports the finding by the trial court regarding valuation of property as the valuations given were within the range of the evidence given. We therefore affirm the trial court's ruling as to the property settlement.

Husband's third issue disputes the court's award to Wife of a non-dischargeable judgment for $25,000.00 as alimony *in solido.* Husband argues that because an award of alimony must be based upon an ability to pay, and because he neither has the ability to pay the $25,000.00 judgment, or the assets out of which to raise these funds, the award is in error.

There is testimony of Wife that indicates an ability of Husband to pay this award. Wife asserts that there was $143,011.95 for which the Husband cannot account. Wife testified that she did not know how the proceeds from the sale of assets were spent, nor is she aware of how loan moneys were applied. The record reflects that the Husband took out various loans, including the loan for $19,500.00 from Volunteer Bank, to pay bills. Wife further asserts that Husband received $300.00 from the sale of the six-teen foot trailer, 19,500.00 from the sale of the truck

8

to his brother and that a note against the truck sold to his brother was paid from proceeds from the sale of the marital home. Wife asserts that the record reflects that Husband admits to receiving $38,000.00 from the sale of a truck to a third party and that money was used to pay off notes , but that Husband can not identify which notes where paid. Wife asserts that Husband claims that the $1,500.00 that he received from his step mother for the mower was used to pay bills. Wife further asserts that Husband admits that a second mortgage made in May of 1997 was used to pay off notes for a swimming pool and unpaid taxes, and to pay bills, however Husband is not able to identify which bills were paid. Although Wife concedes that some money was used to pay bills, she contends that not all of these funds was so used. Wife asserts that money has been hidden in Husband's father's safe. In making the award the court stated:

> The wife urges that she be given a judgement for some of the $143,011.95 for which the husband cannot account. The husband filed a number of exhibits of loans which he incurred, and claims that any excess monies were spent for bills with nothing to substantiate the same. The Court therefore awards the wife, as alimony in solido, her attorney's fees, cost of this cause and a judgement for $25,000.00 plus the difference between the value of any personal property that she received from the husband.[2]

Upon consideration of Wife's testimony and the findings of the trial court we do not believe that the record substantiates Husband's claim of inability to pay.

As to the characterization of the awards as alimony *in solido,* "[t]he award of alimony is within the sound discretion of the trial court." ***Houghland v. Houghland,*** 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992)(citing ***Rains v. Rains***, 58 Tenn. Ct. App. 214, 428 S.W.2d 650 (1968)). The factors to consider in awarding alimony are enumerated in T.C.A. § 36-5-101(d), of which "the need of the spouse is the single most important factor followed by the ability of the obligor spouse to pay." ***Houghland*** , 844 S.W.2d at 621(quoting ***Campanali v. Campanali***, 695 S.W. 2d 193, 197 (Tenn. Ct. App. 1985). These are the factors for the court to consider

---

[2] The difference between the value of any personal property the Wife received and what Husband received is represented by the award of $25,380.00 as alimony *in solido* to Wife.

whether making an award of alimony *in futuro* or alimony *in solido*. **Id.** (Citing **Fisher v. Fisher**, 648 S.W.2d 244, 246-47 (Tenn. 1983). "Where possible, awards of alimony *in solido* are preferred to awards *in futuro*." **Id.** (Citing **Spalding v. Spalding**, 597 S.W. 2d 739, 741 (Tenn. Ct. App. 1980). Alimony *in solido* is distinguished from alimony *in futuro* in that the former is paid in a lump sum and "generally considered a final judgment, ordinarily unchangeable by the court after expiration of the time for appeal" and the later is "paid periodically and remains subject to the control of the Trial Court". **Loria v. Loria**, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). All alimony must be "administered within the capability of the supporting spouse to provide the needed support." **Id.**

In addressing whether an award was properly deemed alimony *in solido* the court in **Aleshire v. Aleshire**, 642 S.W.2d 729 (Tenn. Ct. App. 1981) determined that alimony *in solido* should not be awarded based on an expectation of future earnings. **Houghland,** 844 S.W.2d at 622. However extreme circumstances could justify the award of alimony *in solido* from future earnings. "Illustrative of those circumstances, but not all inclusive, is a situation where a spouse intentionally disposed of his or her tangible assets in order to deprive the other spouse of alimony *in solido*". **Id.** (Citing **Aleshire**, 642 S.W. at 733). The **Houghland,**[3] court held that the trial court did not abuse its discretion in ordering husband to pay amount of note that was not disclosed to Wife as the "record indicates that Husband disposed of marital assets without informing Wife and later concealed these actions from her." **Id.** at 623. The court in **Hall v Hall**, 772 S.W. 2d 432 (Tenn. Ct. App. 1989) responded to a similar complaint[4] by concurring in the trial court's finding "that the husband was instrumental in the dissipation of the wife's assets, and that this fact is entitled to consideration in fixing alimony, both periodic and lump sum." **Hall**, 772

---

[3]    The record in **Houghland v. Houghland** indicated that husband received a check in satisfaction of a promissory note for $83,479.71, representing the equity in the marital home, which he retained and invested into his company without informing wife.

[4]    The appellant in **Hall v. Hall**, 722 S.W. 2d 438, complained that the award of alimony *in solido* was based on an erroneous finding of dissipation of assets.

S.W. 2d at 438.

From our review of the record, we conclude that the trail court did not abuse his discretion in finding that the award of $25,000.00 as alimony *in solido* was necessary for the support and maintenance of Wife. The award of $25,000.00 as alimony *in solido* is supported by a finding that the necessary factors enumerated in T.C.A. § 36-5-101 (d) are present. As to those factors the evidence at trial indicated that Wife earned an associates degree in office administration, but had remained at home for the majority of the marriage. At the time of trial Wife was working at Flecher Equipment as a bookkeeper with net income of approximately $1,100.00 per month. Wife is the custodian of the parties' two minor children and testified to expenses of $2,199.00 per month.

Husband was self-employed from the beginning of the marriage until March of 1997, when he began working for his brother. In a hearing before the court in November of 1997 Husband testified that his salary was $400.00 per week,(approximately $1,7200.00 per month), however at trial evidence in the form of an application for a loan was produced showing that in July of 1997 Husband had represented to the Bank of Crockett that his income was $4,187.00 per month. Federal income tax returns for the years 1994, 1995, and 1996 show perspective incomes of $54,059.00, $41,715.00, and $29,755.00. Husband indicated that the decrease in his income was due to selling his truck to his brother for $19,5000.00 in March of 1997. The record indicates that this truck grossed $76,006.97 for Husband's brother in 1997. Husband claims $2,080.03 in monthly expenses. Despite Husband's sale of his truck to his brother and decreased income , we agree with the trial court that Husband is underemployed.

Even if the award was made from future earnings, we think that this circumstance falls within the exception designated by the court in ***Aleshire,*** as evidence indicates that Husband intentionally disposed of assets in order to deprive Wife of support. In the instant case Wife testified at trial that she believe that the Husband is hiding money in his father's safe.

Q      The $19,500, Volunteer Bank: Do you know: What

11

were those funds borrowed for?

A    I found out that it was borrowed on the front-end loader and Ford – No.  Just the front-end loader, I think, is all that was.
Yeah, just the front-end loader, I think, is all that was tied up with that.  But I didn't find out about that until we was going through the divorce.

Q    What were those funds used for; do you know?

A    No.

Q    Do you say that because you don't know that those funds were, therefore, wasted or dissipated?

A    Well, they never was deposited.  Nothing was ever deposited into a checking account.  So, where's the money at, if we had to pay all these bills?

Q    Are you saying that none of these funds were deposited in your account?

A    Yes, I am.

Q    Do you know if any of the $19,500.00 was dissipated?

A    I saw a check from Volunteer Bank that he had cashed for $9500.00.   And I asked him where it was at, and he said he was going to have to look it up, he didn't remember.  And that right there told me that he wasn't telling the truth, because he keeps up with his money and he knows.

        *        *        *        *        *        *

Q    My question is– You didn't hear my question.  Can you tell us one thing that he has wasted money on or dissipated money on of these funds that you're talking about?

A    He just put it up where nobody can get to it.

Q    Where is it?

A    I'm sure it's in his daddy's safe.

Q    You're saying that now it's in his daddy's safe?

A    I'm pretty sure it is, but I have no proof of that.

Although Wife admits to having no proof of where unaccounted for funds are, both Husband and Wife testify that he was solely in charge of household finances in the latter part of the marriage.  As the party in charge of the family finances, Husband

12

is the one most likely to know where the funds were applied. We think that evidence of the transactions not at arm's length along with Husband's inability to account for funds, supports a finding that Husband dissipated or concealed funds. We further think that evidence supports the trial court's finding that Husband is underemployed, the finding that transfers were not at arm's length, and the finding that evidence does not substantiate Husband's claims as to how monies were spent. We therefore do not think that the trial court abused its discretion in the award of $25,000.00 as alimony *in solido*.

Having found the award of $25,000.00 to be properly made as alimony *in solido* we now consider the characterization of the award as non-dischageable. Husband argues that the final determination as to whether a debt is dischargeable in bankruptcy is one that can only properly be addressed by bankruptcy court considering the specific criteria applicable under federal statutes. The applicable federal statute is U.S.C. § 523(a) (5) (1993 & Supp. 1997) which provides criteria to qualify a debt as non-dischargeable.

> One of the most venerable principles of American bankuptcy law is that a debtor's obligation to provide spousal support cannot be discharged. (Citations omitted). This principle is embodied in 11 U.S.C.A. § 523 (a)(5) (1993 & Supp. 1997) which provides that a discharge does not relieve an individual debtor from any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record." Thus, while state law may guide the federal courts in ascertaining the nature of the obligation, federal law will determine whether the purported spousal or child support is dischargeable (Citations omitted).

***LeMaster v. Ross***, 1997 WL 717237 *2, There is "a strong policy favoring the enforcement of spousal and child support orders in 11 U.S.C.A. § 523 (a) (5)" which overrides the general policy that exceptions to discharge should be interpreted in the debtor's favor. *Id.* (Citations omitted). Although federal courts are bound to look past the labels given debts by state court or the parties, when there is no question that the obligation is support, and it so labeled, the obligation is non-dischargeable in bankruptcy. *Id.* at *3. (Citations omitted). As to what is considered proper alimony

by federal courts:

> [t]his is a long-standing standard for alimony where a spouse's assets or earning capacity justifies such an award. Bankruptcy law does not place a restriction on the state courts' ability to award alimony. As we stated in **Calhoun,** "[d]ivorce, alimony, support and maintenance are issues within the exclusive domain of the state courts."

**Fitzgerald v. Fitzgerald**, 9 F.3d 517, 521 (6th. Cir. 1993)[5](citing **Calhoun,** 715 F.2d at 1107 (citing **Boddie v. Connecticut**, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971)(Black, J., dissenting)).

**In re Calhoun**, 715 F.2d 1103 (6th Cir. 1983), provided an analysis for determining when obligations are actually alimony, maintenance, or support and therefore non-dischargeable in bankruptcy when obligations are not so designated. **Fitzgerald**, 9 F.3d at 520. The obligation in question in **Calhoun** was an assumption of marital debts and to hold harmless the former spouse as part of divorce settlement. The **Calhoun** court found that the "hold harmless" obligation could be a non-dischargeable obligation even where not directly paid to the former spouse. **Id.**

This Court considered whether an award of alimony *in solido* was non-dischargeable in bankruptcy in **Hale v. Hale**, 838 S.W. 2d 206 (Tenn. Ct. App. 1992)[6] The **Hale** Court explained and followed the analysis of the court in **In re Calhoun**, and identified **Calhoun** as the leading case with regard to the issue of dischargeability stating:

> **Calhoun** held that, under 11 U.S.C. Sec. 523 (a)(5),

---

[5] In **Fitzgerald v. Fitzgerald** the court addressed the question of whether something called alimony is "really alimony and not, for example, a property settlement in disguise." **Fitzgerald**, 9 F.3d at 521. The court found the award was alimony as Husband did not produce contrary proof and the award contained conventional alimony restrictions.

[6] **Hale v. Hale**, involved the interpretation of a divorce decree which incorporated a marital dissolution agreement by which husband would assume the second mortgage on the marital house. When husband failed to make payments wife made a motion to the court to determine the dischargeability of debts and asking the court to deem the second mortgage and wife's attorney fees as alimony, maintenance, or support. While the trial court deemed the debts child support, on appeal the Court held that debts were support but modified the trial court's order to make debts spousal support even though the MDA did not obligate parties to pay alimony.

payments must be actually in the nature of alimony or support, to be exempt from discharge but that such payments need not be made directly to the debtor's spouse or to his children. (FN3) The Court further found that Congress intended the determination of what constitutes alimony, maintenance, or support to be made by bankruptcy law, not state law. To make this determination, the Court fashioned a four prong test: (1) whether the state court or the parties intended to create a support obligation through the assumption of a joint debt; (2) whether the assumption of the debt has the actual effect of providing necessary support to insure the daily needs of the former spouse and children are satisfied; (3) whether the amount of the support represented by the assumption is so excessive as to be manifestly unreasonable when measured by traditional concepts of support; (4) if the amount of support is unreasonable, how much of it should be discharged for the purpose of bankruptcy. Although we are not bound by the Sixth Circuit's opinion in *Calhoun*, we find the Court's reasoning to be persuasive.

*Id.* at 208. *See also Herrerra v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996)(citing *In re Fitzgerald*, 9 F.3d 517, 520 (6th Cir,. 1993) (providing a summary of the *Calhoun* four part inquiry to determine if the assumption of a debt or obligation was support)).        Footnote 3 to the above excerpt from *Hale* addresses the assertion made in Husband's brief that "the final determination as to whether a debt is dischargeable in bankruptcy is one that can only properly be addressed by the bankruptcy court to see if it meets the specific criteria as set fourth by applicable federal statues" stating:

[w]hile the bankruptcy code gives the bankruptcy court exclusive jurisdiction to determine the issue of dischargeability for most debts, jurisdiction to determine the dischargeability of alimony, child support or maintenance of wife or child is concurrence with that of state court. The bankruptcy court may be bound by the final order of the state court, after a full evidentiary hearing involving the same issue, on the theories of res judicata and collateral estoppel.

*Hale* at FN3 at 211 (citations omitted); *see also Houghland v. Houghland*, 844 S.W. 2d 625 (finding that the trial court has concurrent jurisdiction with federal bankruptcy court in determining the dischargeability of debt with regard to a divorce decree).

The trial court plainly labeled the award as a support obligation and under the above authorities we find the trial court did not err in making the award non-

15

dischargeable.

We disagree with Husband's contention regarding his fourth issue that the award of $25,380.00 as alimony *in solido* was an improper award to equalize a property settlement. In reaching our conclusion we refer to the discussion in issue III regarding Tennessee law on the propriety of awards of alimony *in solido*, and to the order of the trial court awarding the difference between the value of property received by Wife and the value of that received by Husband. The trial court made the award of $25,380.00, as it did in awarding $25,000.00, based upon the finding that Husband had not substantiated his claims as to how money was spent. Following the reasoning of the courts in **Hall** and **Houghland**, we believe that the trial court did not err in awarding Wife alimony *in solido* based on the discrepancy in the property division where the record indicates the Husband's sale of assets were to family members and not at arm's length and where Husband did not account for a large sum of marital assets ($143.011.95 according to Wife). We further believe that the record substantiates Wife's need as discussed in Issue III.

In Husband's fifth issue he does not contest the assumption of the $19,500.00 debt to Volunteer Bank, but rather takes issue with the trial court's order making the debt non-dischargeable in bankruptcy. Husband also contends that the trial court erred in not taking this debt into consideration when dividing the assets between the parties.

The trial court indicates that it considers this debt a marital debt and issued in its findings the statement:

> [t]he Husband agreed to take the Clarke Michigan front-end loader and assume the indebtedness to Volunteer bank, which is the only debt that the parties have at this time and hold the Wife harmless.

Also in the decree the trial court orders: "[t]hat the Husband shall assume the indebtedness to Volunteer" and that "Husband shall pay this debt, and shall hold Wife harmless from any liability therefor."

Tennessee courts have held that before making the division of marital property, property should be classified as separate or marital. *Kinard v. Kinard,* 986

16

S.W. 2d 220, 230 (Tenn. Ct. App. 1998) (citations omitted). The definition of marital and separate property found in T.C.A. § 36-4-121 (b) provides the ground rules for the classification of property. *Id.* (Citations omitted). After the classification of property the trial court is to divide the marital property in an equitable manner, and the division need not be equal to be equitable. *Id.* (Citations omitted). Because Tennessee is a dual property jurisdiction, the court also distinguishes as between marital and separate debts. *Mondelli v. Howard*, 780 S.W. 2d 769, 773 (Tenn. Ct. App. 1989)(citations omitted) "Marital debts are those debts incurred during the marriage for the joint benefit of the parties, (citation omitted), or those directly traceable to the acquisition of marital property." *Id.* (Citations omitted).

On appeal the decisions of the trial court in dividing the marital estate is not disturbed unless the distribution lacks proper evidentiary support or results from some error or misapplication of law. *Id.* (Citations omitted).

In light of the evidence, we find that the debt to Volunteer Bank was the sole obligation of the Husband. [7] The proof establishes that Wife is not legally obligated for this debt and therefore the trial court erred in designating the debt as non-dischargeable.

Husband's sixth issue is whether the trial court erred in awarding the Wife as alimony *in solido* the sum of $6, 298.27 for attorney's fees. Husband cites *Brown v. Brown*, 913 S.W.2d 163 (Tenn. Ct. App. 1994) for the proposition that attorney fees are only appropriate when the spouse seeking them lacks sufficient funds to pay her legal expenses or would be required to deplete her resources in order to pay these expenses. Husband asserts that the award of attorney's fee was an abuse of the court's discretion and submits in the alternative that if the award of attorney's fees is appropriate, the award should not be classified as alimony *in solido*, thereby preventing discharge in bankruptcy.

---

[7] In his deposition Husband testifies that Wife did not go with him to make the loan and "[s]he might not had knew it". Nor can Husband produce proof of the use of these funds stating that the money was used to pay "family bills" but is unable to name which bills. As noted in our discussion of issue III herein, Wife testifies as to her belief that Husband concealed at least a portion of these funds from her.

17

> The decision to award attorney's fees to a party in a divorce proceeding, and the amount thereof, are largely within the trial court's discretion and will not be disturbed upon appeal unless the evidence preponderates against such a decision. (Citations omitted).
>
> As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d).

*Houghland*, 844 S.W. 2d at 623. Where the wife has shown that she is not able to pay wife's attorney, and where the husband is able to pay, the court may properly order the husband to pay wife's attorney's fees. *Id.* (Citing *Harwell v. Harwell*, 612 S.W. 2d 182, 185 (Tenn. Ct. App. 1980); *Palmer v. Palmer*, 562 S.W. 2d 833, 839 (Tenn. Ct. App. 1977). However, where the trial court awards the wife alimony *in solido* sufficient to meet the needs of the wife and to pay her attorney's fees, it may not be proper for the trial court to make an additional award of alimony *in solido* for the payment of wife's attorney's fees. *Id.*

We find the award $25,000.00 as alimony in solido, along with the award of $25,380.00 as alimony *in solido* is an adequate award from which to pay her attorney's fees. Therefore we conclude that the additional award of $6,298.27 for Wife's attorney's fees was not appropriate. Accordingly, we reverse that part of trial court's order.

The Husband's seventh and final issue is whether the trial court erred in ordering him to maintain life insurance in the amount of $100,000.00 on his life for the benefit of the minor children. Husband concedes that T.C.A. § 36-5-101(g) empowers the court to order the purchase of a life insurance policy and to designate the beneficiary on the policy. However, Husband contends that this requirement by the trial court is in error due to his limited income. Husband contends that the trial court did not explore the cost of such a policy. However, Husband put on no proof of the cost in order to show his inability to pay.

The court in *Young v. Young,* 971 S.W. 2d 386 (Tenn Ct. App. 1997), held that the trial court did not abuse its discretion in ordering that the husband maintain $100,000.00 in life insurance for his minor child stating that the court was unwilling

18

to "interfere with the trial court's exercise of its discretion absent a showing of abuse." *Id.* at 392. Because we find that the trial court did not abuse its discretion in ordering the Husband to purchase and maintain a $100,000.00 life insurance policy on his life for the benefit of the minor children, we affirm this order of the trial court.

On appeal the Wife requests that an award of attorney's fees and expenses for the appeal of this cause. The Court in *Houghland*, 844 S.W.2d 623 declined to award the Wife, appellee, attorney's fees incurred on appeal citing *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973) in which this Court held that where both parties were partially successful on appeal, an award of attorney's fees was improper. In the instant case we decline to award Wife's attorney's fees incurred on appeal.

In sum, the order of the trial court ordering the Volunteer Bank debt to be non-dischargeable in bankruptcy is reversed. The trial court's award of attorney fees to Wife is reversed. The case is remanded to the trial court for further proceedings consistent with this Opinion regarding child support. The order is affirmed in all other respects. Costs of the appeal are assessed one-half to each party.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**


**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**