ELECTRONIC CITATION:  2014 FED App.0004P (6th Cir.)
File Name: 14b0004p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  JAMES ALBERT THOMAS; | ) | |
| REBECCA MARIE THOMAS, | ) | No. 13-8048 |
| | ) | |
| Debtors. | ) | |

_____

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky.
Bankruptcy Case No. 13-10043.

Decided and Filed: June 3, 2014

Before: HUMPHREY, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ON BRIEF:** Elaina L. Holmes, HOLMES LAW FIRM, Ashland, Kentucky, for Appellants. Christopher A. Conley, CAMPBELL WOODS, PLLC, Ashland, Kentucky, for Appellee.

1

---

## OPINION

---

**GUY R. HUMPHREY**, Bankruptcy Appellate Panel Judge. Debtor[1] appeals the order overruling his objection to a proof of claim filed by his ex-wife asserting a priority domestic support obligation debt for $12,500. The bankruptcy court applied the *Calhoun* test and found the debt ordered to be paid by the domestic relations court to the debtor's former spouse on account of her payment of a judgment lien and second mortgage against the former marital residence from proceeds from the sale of the home was "in the nature of alimony, maintenance, or support." For the reasons stated below, the bankruptcy court's order is AFFIRMED.

## ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred in finding that Creditor's claim is a domestic support obligation and overruling Debtor's objection to Creditor's proof of claim.

## JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497

---

[1] Debtor's current wife is listed as a co-appellant in this appeal. In a parenthetical, their brief argues that she should not be listed as an obligor on Creditor's proof of claim. This issue is not listed in the issues presented on appeal. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Thomas v. Aquil* (*In re Thomas*), 516 F. App'x 543 (6th Cir. 2013) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)). Nothing in the bankruptcy court's opinion indicates that this issue was raised before the bankruptcy court. Moreover, the bankruptcy court's opinion references the Debtor in the singular tense throughout. This opinion will also refer to Debtor in the singular.

2

(1989) (citation and quotation marks omitted). "The concept of 'finality' in the bankruptcy context," however, "should be viewed functionally," with appellate courts enforcing this threshold requirement "in a more pragmatic and less technical way in bankruptcy cases than in other situations." *Simon v. Lis* (*In re Graves*), 483 B.R. 113, 115 (E.D. Mich. 2012) (quoting *Cottrell v. Schilling* (*In re Cottrell*), 876 F.2d 540, 541–42 (6th Cir.1989) (internal quotation marks and citations omitted)); *Huntington Nat'l Bank v. Richardson (In re Cyberco Holdings, Inc.)*, 734 F.3d 432, 437 (6th Cir. 2013). The Sixth Circuit allows appeals from "an order in a bankruptcy case [that] finally disposes of discrete disputes within the larger case[.]" *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir.1996) (internal quotation marks, alteration, and citation omitted). "A bankruptcy court's order overruling debtor's objection to claim is a final order for purposes of appeal." *In re Mace*, 496 B.R. 252, 2013 WL 4067623, at *1 (B.A.P. 6th Cir. Aug. 13, 2013) (table) (citing *Morton v. Morton* (*In re Morton*), 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003)). The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).

The Sixth Circuit Court of Appeals has held that the determination of non-dischargeability for a domestic support obligation is a mixed question of law and fact.

> We review the factual determination of whether an obligation constitutes nondischargeable support under the "clearly erroneous" standard. *See In re Perlin*, 30 F.3d 39, 40 (6th Cir. 1994). On the other hand, the interpretation of § 523 is a legal issue that we review de novo. *See In re Calhoun*, 715 F.2d 1103, 1111 (6th Cir. 1983) (stating that the application of the wrong legal standard, and the district court's misallocation of the burden of proof, would be reviewed *de novo*).

*Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397, 400 (6th Cir. 1998).[2]

## FACTS[3]

A. *The First Marriage*

Debtor, James Thomas, and Creditor, Jennifer Clark, were originally married on August 4, 1995. They had two children together, born during the term of the first marriage. Debtor and Creditor purchased a family home on July 12, 1999, using a loan secured by a first mortgage on the property. On April 28, 2001, the couple obtained a loan in the amount of $15,463.79 secured by a second mortgage on the property.

On May 13, 2003, the parties entered into a separation agreement pertaining to child custody, division of property and child support. Their divorce was final on June 25, 2003.

In the 2003 divorce consent decree, Debtor agreed to relinquish any interest in the family home and Creditor agreed to assume and hold Debtor harmless from the obligation to pay both the first mortgage and second mortgage. Debtor also agreed to pay child support in the amount of $510.00 per month, which was an upward deviation from the standard calculation of child support

---

[2] Debtor asserts that the standard of review should be de novo because the bankruptcy court did not need to assess the credibility of witnesses due to the fact that there was no live testimony. The parties stipulated to certain facts and stipulated to the entry as exhibits the 2003 and 2007 divorce judgments as well as the 2009 post-divorce order. Additionally each submitted an affidavit in lieu of live testimony and waived cross-examination. Even assuming Debtor is correct, the Panel holds that the result would be the same under a de novo standard of review.

[3] These facts are taken primarily from the bankruptcy court's opinion *In re Thomas*, No. 13-10043, 2013 WL 5493214 (Bankr. E.D. Ky. Oct. 2, 2013). Debtor does not challenge these factual findings. Rather, Debtor challenges the inferences the bankruptcy court made from the factual findings and the ultimate conclusion that both debts were support obligations that are non-dischargeable.

4

in Ohio.  The 2003 consent decree specified that "[t]he deviation [in child support] is in the best interests of the children as the Wife is paying both mortgages on the marital property."  Further, the parties agreed that neither of them would pay spousal support to the other.

B. *The Second Marriage*

The couple remarried on April 30, 2004.  However, on April 18, 2007, this marriage also ended in divorce.  Like their first separation, Debtor and Creditor reached an agreement for the "distribution of assets, payment of debts, and other matters."  The 2007 divorce consent decree provided that the agreement was "in all respects fair, just and equitable" and adopted and approved the terms of the settlement agreement reached by the parties.  Debtor and Creditor were each represented by counsel who signed off on the 2007 consent decree.

The terms of the 2007 consent decree were similar to the parties' 2003 consent decree in some respects.  Neither spouse was obligated to provide spousal support.  Creditor received primary custody of the children.  Debtor again agreed to give up any interest in the property, which he had never conveyed as required by the 2003 consent decree.  Creditor agreed to assume and hold Debtor harmless on the first mortgage loan in the 2007 consent decree.

However, there were several important differences.  Debtor's child support obligation was just $369.15 per month, and Debtor and Creditor agreed to split the second mortgage obligation.  Specifically, Section 4 of the 2007 consent decree provides:

> That [Creditor] shall receive the marital residence, free and clear of any and all claims on behalf of [Debtor], and she shall assume and be responsible for the first mortgage, saving [Debtor] harmless thereon, and the parties shall equally pay the second mortgage.  After the sale of the real estate, any deficiency on the mortgage indebtedness shall be divided between the parties.  Should there be a net balance after the sale, these proceeds shall be the sole property of [Creditor].

5

Consistent with the 2007 consent decree, Debtor quit-claimed his interest in the property to Creditor by Deed dated April 4, 2007, and recorded May 31, 2007.

C. *The Judgment Lien*

On November 18, 2004, Auto Now Acceptance Co., LLC ("Auto Now") obtained a judgment against Debtor in the amount of $8,082.37, plus interest and costs. On October 20, 2005, Auto Now filed a judgment lien against Debtor. The judgment lien was not addressed in the 2007 consent decree even though it had attached to the property prior to the second divorce. Creditor testified that she was not aware of the judgment lien until she offered the property for sale. Although Debtor's affidavit addresses the circumstances preceding imposition of the judgment lien, the record does not disclose whether Debtor knew that the judgment lien had attached to the property at the time of the 2007 divorce proceeding. On appeal Debtor asserts that Creditor knew about the circumstances leading to the judgment lien.

D. *The Property Sale and 2009 Order*

Creditor sold the family home to third-party buyers on September 18, 2008. The sale proceeds were not sufficient to fully cover all of the costs of the sale. The first mortgage and second mortgage debts of $66,095.64 and $15,000.00, respectively, were satisfied. Creditor negotiated release of the judgment lien for $5,000.00, which was paid from the sales proceeds. After the assessment of all taxes and fees, Creditor paid $836.14 to close the transaction.

On January 15, 2009, the state court entered another order in the 2007 divorce proceeding (the "2009 order"), which provided in part:

> 2. Defendant [Debtor] shall reimburse the Plaintiff [Creditor] $7,500.00 for his interest in the secondary mortgage.

6

3. Defendant shall reimburse the Plaintiff $5,000.00 for monies paid
by her for paying off a judgment lien of his.

E. *The Disputed Claim*

Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Debtor's schedules listed two obligations to Creditor. The first was a $560.00 unsecured priority claim for child support on Schedule E, which was not disputed. The other was a $15,000.00 unsecured claim on Schedule F described only as "Debt." Creditor filed Proof of Claim 6–1 asserting a priority unsecured claim for "[a]limony, maintenance, or support" in the amount of $12,500.00 for the second mortgage debt and the judgment lien debt. Debtor objected, arguing that Claim 6-1 is not in the nature of alimony, maintenance, or support, but "is for a second mortgage debt and judgment lien on property that were satisfied when the real estate was sold by creditor previously," and is thus not a domestic support obligation.

F. *The Parties' Evidence*

Debtor and Creditor submitted a joint stipulation of facts, acknowledging entry of the 2007 consent decree and the 2009 order and attaching copies of each. The parties each presented testimony by affidavit. No objections were raised and the affidavits were admitted as the direct testimony of the witnesses. At the evidentiary hearing, both parties agreed to forego cross-examination, allowing the affidavits to stand as the witnesses' only testimony. In addition to their direct testimony, each party submitted an exhibit list and copies of relevant documentary evidence. The exhibits of both parties were admitted without objection.

The bankruptcy court entered an opinion and order finding Creditor's claim is in the nature of "alimony, maintenance or support" and overruling Debtor's objection to her proof of claim. *In re Thomas*, No. 13-10043, 2013 WL 5493214 (Bankr. E.D. Ky. Oct. 2, 2013). Debtor timely filed an appeal to this panel.

**DISCUSSION**

"Sections 523(a)(5) and (15) operate to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy[,]" *In re Johnson,* 397 B.R. 289, 295 (Bankr. M.D.N.C. 2008) (citation omitted).  Such debts are non-dischargeable for individuals in a Chapter 7, 11 or 12.  However, unlike those chapters, chapter 13 distinguishes between § 523(a)(5) domestic support obligations, which are non-dischargeable, and other § 523(a)(15) "post-marital obligations," including property settlements, which are dischargeable. *Id.  See* 11 U.S.C. § 1328(a)(2).  In addition, domestic support obligations, as a priority debt, must be paid in full during the chapter 13 plan.  11 U.S.C. §§ 507(a)(1)(A) and 1322(a)(2).

"Domestic support obligation" is defined by the Bankruptcy Code as follows:

> **(14A)** The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> > **(A)** owed to or recoverable by--
> >
> > > **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > >
> > > **(ii)** a governmental unit;
> >
> > **(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> >
> > **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

> **(i)** a separation agreement, divorce decree, or property settlement agreement;
>
> **(ii)** an order of a court of record; or
>
> **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> **(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

In *Long v. Calhoun* (*In re Calhoun*), 715 F.2d 1103, 1109-10 (6th Cir. 1983), the Sixth Circuit enunciated a four-part analysis for making the determination whether an obligation that was not specifically designated as alimony or maintenance was actually in the nature of support, and thus, nondischargeable. As subsequently re-stated in *Fitzgerald*:

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald v. Fitzgerald* (*In re Fitzgerald*), 9 F.3d 517, 520 (6th Cir. 1993) (citing *Calhoun*, 715 F.2d at 1109-10). "The burden of demonstrating that an obligation is in the nature of support is on the non-debtor." *Fitzgerald*, 9 F.3d at 520 (citing *Calhoun*, 715 F.2d at 1111).

The bankruptcy court applied the proper test and analyzed the claim at issue using the *Calhoun* factors.[4] *Thomas*, 2013 WL 5493214 at *4. Debtor's brief on appeal focuses on the first element, that is, whether the state court or parties intended to create a support obligation. Accordingly, this opinion will not address the remainder of the *Calhoun* test.

A. *Second Mortgage Debt*

The bankruptcy court determined that it was the intent of the state court and the parties to create a support obligation. The bankruptcy court cited five reasons for its decision: (1) support is inferred because the second mortgage payments protected the children's home; (2) the lack of an upward deviation in child support payments in the 2007 consent decree indicates a support payment; (3) the 2007 consent decree's provision that if a sale of the family home created a deficiency debt that the parties split the debt, while if it created a surplus, Creditor was entitled to all of the surplus, was intended to assist in providing a home for the children; (4) Creditor's hold harmless agreement in the 2003 consent decree does not relieve Debtor from his obligation to pay the disputed claim; and (5) the agreements do not show that Debtor was entitled to spousal support.

Debtor's brief implies that Creditor's obligation to pay both mortgages in the 2003 divorce decree is binding despite entry of the 2007 consent decree and the 2009 order, but does not cite any authority for this proposition. The bankruptcy court took the better view, that is, that the 2007 consent decree and the 2009 order superceded the 2003 divorce terms. However, the bankruptcy court did also consider the terms of the 2003 divorce in determining the state court and parties' intent.

Debtor also challenges the bankruptcy court's reliance on the fact that in the 2007 consent decree child support payments went down, but that Debtor became obligated on the second mortgage

---

[4] In *Fitzgerald*, 9 F.3d at 520 and *Sorah*, 163 F.3d at 401, the Sixth Circuit modified the *Calhoun* standard to eliminate the "present needs" test, holding that the current needs of the non-debtor spouse should not be considered when determining if the obligation was intended as support. This prong is not relevant to this appeal.

10

as a further indication that the obligation was in the nature of support. Debtor argues that the record indicates that the reason for the reduction in child support was the fact that he was unemployed. While that fact is supported by the record, that fact does not negate the bankruptcy court's inference. They are not mutually exclusive. The 2003 upward deviation from the standard calculation of child support clearly ties payment of the second mortgage to the children's support. The fact that Debtor was out of work at the time of the second divorce and the amount labeled as "child support" decreased but that he obtained a new obligation to pay half of the second mortgage supports an inference that the mortgage payment was part of support for the children. As stated by one bankruptcy court:

> [T]he majority of courts considering whether a mortgage debt assumed by or ordered to be paid by a debtor pursuant to a judgment of divorce have held that such an obligation is in the nature of "support." *See, e.g., Gianakas v. Gianakas* (*In re Gianakas*), 917 F.2d 759, 764 (3d Cir.1990) ("The great weight of authority holds that a spouse's assumption of mortgage debts which enable members of the family to remain in the marital residence is an obligation in the nature of support, maintenance or alimony.") (collecting cases); *In re Johnson*, 397 B.R. at 297–98 ("Numerous courts have held that an obligation that is essential to enable a party to maintain basic necessities or to protect a residence constitutes a nondischargeable support obligation." (collecting cases)). And although the divorce judgments before some courts included a hold harmless clause, the absence of such a clause here is not dispositive. *In re Trump*, 309 B.R. at 593–94 ("Even absent [hold harmless or indemnification] language, the Agreement created a legally enforceable obligation for [the debtor] to make payments on the second mortgage note.").

*In re Palmieri*, No. 11-51224, 2011 WL 6812336, at *5 (Bankr. E.D. Mich. Nov. 21, 2011). *See also In re King*, 461 B.R. 789, 794 n.23 (Bankr. D. Alaska 2010) (collecting cases).

The bankruptcy court also found that Debtor's payment of the second mortgage provided necessary support because the uncontradicted testimony of Creditor was that her income was insufficient to cover both the first and second mortgage payments. Although Debtor has asserted that he was out of work at the time and that Creditor made more money, Debtor has not disputed the finding that Creditor could not afford both the first and second mortgage payments.

11

Debtor argues that the debt created by the requirement in the 2007 consent decree that he pay half of the second mortgage is a property settlement rather than a domestic support obligation. He argues that nothing in either divorce decree was labeled as spousal support and that the 2003 consent decree specifically says that no alimony or spousal support was awarded. Debtor asserts that the bankruptcy court erroneously relied on "stock language" in the 2007 consent decree, which referred to spousal support, even though none had been awarded. *See Thomas*, 2013 WL 5493214 at *8.

The bankruptcy court's opinion does mention references to "child and spousal support" in the 2007 consent decree to indicate a probability that the state court intended something to be in the nature of spousal support. However, this reference is in passing and is not the primary support for the bankruptcy court's conclusion. If the bankruptcy court erred in using the "stock language" as creating an inference of support, it was harmless in view of the other reasons for finding that the mortgage obligation was in the nature of support. Bankruptcy courts are permitted to find a debt to be in the nature of support regardless of the label used by the state court. In the present case, the bankruptcy court's primary focus was the state court's implications that the mortgage obligation was to assist in providing for the children's support by providing them with a home.

Finally, Debtor asserts that the 2007 consent decree language that contemplates the sale of the home rather than Creditor's continued residence there, undermines the bankruptcy court's conclusion. Accordingly, Debtor argues that the bankruptcy court's reliance on the children's need to maintain their home is a false conclusion and does not support a finding that the requirement to pay the second mortgage is in the nature of alimony, maintenance or support.

The bankruptcy court found paragraph 4 of the 2007 consent decree to create an ambiguity due to the language providing for the allocation of sale proceeds in the event of a surplus arising from the sale of the property or a deficiency in the event that the sale proceeds did not equal or exceed the mortgages. The bankruptcy court acknowledged that this paragraph could be read as an indication of a property settlement. However, the bankruptcy court found it more likely that the order allowing Creditor to keep proceeds of a possible sale, while requiring Debtor to help cover a deficiency was

12

likely intended to provide for the children's need for a home. Allowing Creditor to keep proceeds provided her with a possible down payment on a future home, while requiring Debtor to cover part of any deficiency also increased creditor's ability to come up with a loan payment on a new home.

Looking at the totality of the circumstances, the bankruptcy court's conclusion that the parties and the state court intended to create a support obligation is not clearly erroneous. The fact that the mortgage payments helped provide a residence for the children is a strong indication that the payments were intended as support rather than a property settlement. The language in the 2003 consent decree is the strongest indication that the state court tied the payment of the second mortgage to the children's support. The payment of half of the second mortgage was never specifically labeled as either support or a property settlement. The bankruptcy court's determination that it is support is not clearly erroneous.

B. *Judgment Lien Debt*

The bankruptcy court also held that the $5,000 debt that arose from Creditor paying off a judgment lien against the home was a domestic support obligation.

> Although the 2007 Consent Decree did not specifically address the Judgment Lien, it did assign any proceeds from the sale of the Property to the Creditor and, as discussed above, these proceeds are in the nature of support. The Debtor's sole responsibility for the Judgment Lien is resolved conclusively by the 2009 Order. The Judgment Lien Debt is necessarily a DSO because it prevented the Creditor and her children from receiving sales proceeds that were intended as support. The Judgment Lien Debt is thus "in the nature of alimony, maintenance, or support," and is properly characterized as a DSO.

*In re Thomas*, No. 13-10043, 2013 WL 5493214 at *10 (Bankr. E.D. Ky. Oct. 2, 2013).

13

Debtor argues that since the judgment lien was not addressed by the divorce decree it cannot be considered to be alimony, maintenance or support. Debtor argues that it was obtained in July 2004 while the second marriage was still intact, and that Creditor was fully aware of the circumstances leading to the judgment lien.

Creditor argues that the proceeds from the sale of the home were intended to provide support for the children. Since the judgment lien reduced the amount that she received from the ultimate sale of the home, it reduced the amount of support she received. Therefore, she argues the debt should be treated as a support obligation.

Case law explains that debts can qualify as support and be determined nondischargeable pursuant to § 523 even if they are owed to parties other than the payees in the statute, if the former spouse could be held responsible for the debt in question. *See Holliday v. Kline* (*In re Kline*), 65 F.3d 749 (8th Cir.1995). *See also Rugiero v. DiNardo*, 502 F. App'x 436, 439 (6th Cir. 2012) (holding that attorney fees could be properly treated as a domestic support obligation under the circumstances of that case, including the fact that they were incurred in a proceeding that concerned the welfare of the children); *Kassicieh v. Battisti* (*In re Kassicieh*), 482 B.R. 190 (B.A.P. 6th Cir. 2012), *aff'g* 467 B.R. 445 (Bankr. S.D. Ohio 2012) (guardian ad litem fees constituted a "domestic support obligation").

The judgment lien debt is not a true third-party debt because it has already been paid to the third party and Debtor has been ordered to reimburse Creditor directly for the payment. However, the reasoning for non-dischargeability of third-party debts that qualify as support applies. The state court intended Creditor to keep the family home as a residence and shelter for the children or to have the proceeds of the sale of the home as support. The 2003 consent decree required Debtor to help provide that support for the children by making larger child support payments, while the 2007 consent decree actually required the Debtor to pay half of the second mortgage. The judicial lien filed against the family home reduced the amount of support that the children received when the family home was sold. Accordingly, the state court's order which required Debtor to pay Creditor

14

for that reduction in support is a domestic support obligation and is non-dischargeable in his chapter 13 case.

The parties and the bankruptcy court focus on the 2003 and 2007 consent decrees to determine the nature of the debt that Debtor owes to Creditor. However, both the debts also arise from the 2009 order. That order references Creditor's motions for contempt for Debtor's failure to pay child support and for modification of child support. The 2009 order notes that Creditor withdrew both of those motions due to the arrears being paid and due to Debtor being laid off of work. However, the 2009 order goes on to order Debtor to reimburse Creditor for the second mortgage debt and the judgment lien debt, as well as to reimburse half the expenses of certain medical bills. The fact that these two debts were addressed during a hearing to deal with support issues, further indicates that the state court and the parties intended that these debts be considered in the nature of alimony, maintenance or support. Moreover, at the time of the 2009 order, the family home had already been sold. If the intention had been for the proceeds of the sale to be a property settlement, the state court could have made that clarification. Because the payment of the second mortgage is tied to support issues in all three judgments, and the judgment lien debt reduced the amount of support received and is provided for as part of a support order, the bankruptcy court's finding that the state court intended both these debts be treated as support obligations is not clearly erroneous.

**CONCLUSION**

The facts presented to the bankruptcy court support the legal conclusion that the debt owed to Creditor is in the nature of alimony, maintenance or support and is therefore non-dischargeable. The bankruptcy court's order overruling Debtors' objection to Creditor's proof of claim is AFFIRMED.