**IN RE Alexandra Arykah CARTER**
**f/k/a Derrick D. Carter, Debtor**

**Alexandra Arykah Carter f/k/a Derrick**
**D. Carter, Plaintiff**

**v.**

**Angela M. Carter, Defendant**

**Case No. 14–12083**
**Adversary Case No. 14–1036**

United States Bankruptcy Court,
S.D. Ohio, Western Division.

Signed March 18, 2017

Paul J Minnillo, Andrew L. Ruben, Minnillo & Jenkins Co LPA, Cincinnati, OH, for Plaintiff.

Angela Carter, Ann Arbor, MI, Pro se.

## MEMORANDUM OF DECISION

Jeffrey P. Hopkins, United States Bankruptcy Judge

This is an action to determine the dischargeability of a marital debt. The Court conducted a trial and the parties filed post-trial briefs. See Docs. 49 and 50. This memorandum constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

### JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference entered in this District. Pursuant to 28 U.S.C. § 157(b)(2)(I), this is a core proceeding in which the Court possesses the authority to enter final judgment.[1]

---

1. *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and its progeny are not implicated because this action does not involve a "Stern claim." *See Executive Benefits Ins. Agency v. Arkison*, —— U.S. ——, 134 S.Ct. 2165, 2170, 189 L.Ed.2d 83 (2014)("Stern claim" is a core proceeding that could have been brought as a suit at common law).

## THE DISSOLUTION

Plaintiff, Alexandra A. Carter,[2] and Defendant, Angela M. Carter, married in 2001 (hereafter referred to as "Alexandra" and "Angela"). The marriage was dissolved on March 27, 2013. The dissolution decree directed the parties to sell the marital residence and split the proceeds or debt equally. Alexandra was permitted to live in the residence until sold and was required to assume sole responsibility for the monthly mortgage payments beginning May 1, 2013. The decree required each party to pay one-half of the monthly mortgage payments prior to May 1, 2013.

The decree awarded Angela primary custody of the couple's only child. Alexandra was ordered to pay child support of $588.58 per month. Neither party asked for spousal support and the decree did not award any spousal support.

## THE FORECLOSURE

At the time of the dissolution, the monthly mortgage payment was $1,359.51. Angela made payments to the mortgagee of $1,359.51 for the first three months following the dissolution. She made the payments on March 31, April 30, and May 31 of 2013. Alexandra paid half of the monthly mortgage payment to Angela in March and April of 2013.[3] Neither party made any further mortgage payments. Consequently, the mortgagee foreclosed on the marital residence. The foreclosure resulted in a deficiency. The mortgagee later waived the deficiency pursuant to a settlement agreement with the parties.

## THE HOLD HARMLESS PROVISION

The dissolution decree requires Alexandra to hold Angela harmless on, among other debts, the monthly mortgage payments that the decree requires Alexandra to pay. By this action Alexandra seeks a determination that her obligation to hold Angela harmless on the post-decree mortgage payments is dischargeable. On the other hand, Angela seeks a nondischargeable judgment against Alexandra for Alexandra's failure to hold Angela harmless on: (1) the amounts Angela paid to the mortgagee post-dissolution; (2) any amounts Angela may owe for unpaid real estate taxes; and (3) any income tax liability Angela may owe due to the mortgagee's waiver of the deficiency.[4]

## ISSUE

The issue before the Court is whether Alexandra's obligation to hold Angela harmless on the post-decree mortgage payments required of Alexandra constitutes a domestic support obligation that is nondischargeable pursuant to 11 U.S.C. § 1328(a)(2), incorporating 11 U.S.C. § 523(a)(5).

2. On April 4, 2016, Debtor Derrick D. Carter filed a Notice of Name Change, indicating that he has legally changed his name to Alexandra Arykah Carter and requesting that the records of the Court be updated accordingly. See Doc. 31; see also Case No. 14–12083 at Doc. 52.

3. Angela questioned whether Alexandra had any proof of the payments. Alexandra did not. However, Alexandra's testimony was not rebutted by Angela. Angela testified that she could not recall if Alexandra paid one-half of the mortgage in March and April of 2013.

4. Even if the Court rules in favor of Angela concerning any future income tax liability resulting from the forgiveness of debt (i.e., the mortgagee's waiver of the deficiency), Alexandra's liability to Angela would be limited to the future income tax liability related to the forgiveness of debt exceeding one-half of the mortgage balance at the time of the dissolution. According to evidence submitted by Angela, the mortgage balance nine days after the entry of the dissolution decree was $167,000.00. See Def. Ex. I at 2. The decree requires the parties to split this debt equally and hold each other harmless on one-half of the debt.

## DOMESTIC SUPPORT OBLIGATIONS ARE NONDISCHARGEABLE

In a chapter 13 case, a "domestic support obligation" is not dischargeable. See 11 U.S.C. § 1328(a)(2); 11 U.S.C. § 523(a)(5). A domestic support obligation is a debt to a former spouse, among others, that is "in the nature of alimony, maintenance, or support ... without regard to whether such debt is expressly so designated[.]" See 11 U.S.C. § 101(14A).

## ELEMENTS OF A DOMESTIC SUPPORT OBLIGATION

■ If marital debt is not expressly designated as alimony, maintenance, or support, courts within the Sixth Circuit apply a four-part test to determine whether the debt is a domestic support obligation. *In re Thomas*, 511 B.R. 89, 95 (6th Cir. B.A.P. 2014); *In re Phile*, 490 B.R. 250, 255 (Bankr. S.D. Ohio 2011)(Buchanan, J.). The four-part test provides:

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993). Angela bears the burden of proving these elements by a preponderance of the evidence. *See id.* (allocating burden of proof to the non-debtor).

## ELEMENT OF INTENT

1. State Law Indicia of Support

■ ▪ Courts look to traditional state law indicia of support to determine whether there was an intent to create a support obligation. *Phile*, 490 B.R. at 256. These factors include, but are not limited to:

> (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits, (4) the nature of the obligations assumed; (5) the structure and language of the parties' agreement or the court's decree; (6) whether other lump sum or periodic payments were also provided; (7) the length of the marriage; (8) the age, health and work skills of the parties; (9) whether the obligation terminates upon the death or remarriage of the parties; (10) the adequacy of support absent the debt assumption; and (11) evidence of negotiations or other understandings as to the intended purposes of the assumption.

*Id.* Several of these factors weigh in favor of Alexandra. Alexandra's obligation to pay 100% of the mortgage starting May 1, 2013, was not a direct payment to Angela. Instead, it required a direct payment to the mortgagee, reflecting an assumption of debt. Alexandra's obligation to pay the mortgage did not terminate upon death or remarriage. The obligation is not labeled as alimony, maintenance, or support. The obligation is located in a section of the dissolution decree entitled "Division of Property and Debts." The section entitled "Spousal Maintenance" provides that Angela did not ask for spousal maintenance and was not awarded spousal maintenance.

■ Indeed, when a decree contemplates the sale of the marital residence and an equal sharing of the equity or debt, it is "strongly indicative of a division of proper-

ty" whereby a debtor's obligation to pay the monthly mortgage pending the sale is a dischargeable debt. *In re Shelton*, 92 B.R. 268, 273 (Bankr. S.D. Ohio 1988).

### 2. In re *Thomas*

 As noted by Angela, the Bankruptcy Appellate Panel of the Sixth Circuit recently stated that " 'the majority of courts considering whether a mortgage debt assumed by or ordered to be paid by a debtor pursuant to a judgment of divorce have held that such an obligation is in the nature of support.' " *In re Thomas*, 511 B.R. 89, 96 (6th Cir. B.A.P. 2014)(quoting *In re Palmieri*, No. 11–51224, 2011 WL 6812336, at *5 (Bankr. E.D. Mich. Nov. 21, 2011)). However, courts have reached this conclusion where the non-debtor remained in the marital residence and the debtor's obligation to pay the mortgage was a means of providing shelter that the spouse and children could not otherwise afford. For example, *Thomas* cites five cases in support of the proposition referenced by Angela. In all five cases the non-debtor lived in the marital residence following the separation. *See Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759 (3d Cir. 1990); *In re Palmieri*, No. 11–51224, 2011 WL 6812336 (Bankr. E.D. Mich. Nov. 21, 2011); *In re King*, 461 B.R. 789 (Bankr. D. Alaska 2010); *In re Johnson*, 397 B.R. 289 (Bankr. M.D.N.C. 2008); *In re Trump*, 309 B.R. 585 (Bankr. D. Kan. 2004). The same occurred in *Thomas*. *See Thomas*, 511 B.R. at 92–93. The Third Circuit, in *Gianakas*, touched on this distinction when it stated that "[t]he great weight of authority holds that a spouse's assumption of mortgage debts *which enable members of the family to remain in the marital residence* is an obligation in the nature of support, maintenance or alimony." *Gianakas*, 917 F.2d at 764 (emphasis added).

At least one court has distinguished *Thomas* on the same basis. *See Rismiller v. Schweitzer (In re Schweitzer)*, Adv. No. 14–3137, 2015 WL 5918031 (Bankr. N.D. Ohio Oct. 8, 2015). The facts in *Schweitzer* are similar to the facts before this Court. A chapter 13 debtor's marriage was dissolved prior to the bankruptcy. The debtor ("Schweitzer") remained in the marital residence and assumed sole responsibility for the mortgage, agreeing to hold his former spouse harmless on the same. The former spouse and the parties' two minor children moved out of the marital residence. According to the separation agreement, neither party owed spousal support to the other. Notwithstanding, the former spouse argued that the debtor's obligation to hold her harmless on the mortgage was intended to be a support obligation. Like Angela, the former spouse cited *Thomas* for the proposition that a debtor's obligation to pay the monthly mortgage is a support obligation. The bankruptcy court distinguished *Thomas* because Schweitzer's former spouse and children did not remain in the marital residence. *Id.* at *6–7; *see also Webber v. Proffitt (In re Webber)*, —— B.R. ——, 2016 WL 2341184 (Bankr. W.D. W.Va. 2016)(debtor's obligation to pay mortgage on former marital residence awarded to debtor was not a support obligation but "simply a condition of his own continued occupancy of the [p]roperty"); *Schweitzer v. Schweitzer (In re Schweitzer)*, 370 B.R. 145 (Bankr. S.D. Ohio 2007)(debtor's obligation to hold former spouse harmless on mortgage did not create a support obligation where debtor was awarded exclusive use of the marital residence and the separation agreement provided that neither party owed spousal support).

This Court is not holding that a debtor's obligation to pay a mortgage can never constitute a support obligation when the debtor remains in the residence. It is sim-

ply to say that there is no per se rule that such an obligation is in the nature of support. Whether it constitutes a support obligation depends on the facts of each case in light of the traditional state law indicia of support.

### 3. Alexandra's Pre–Decree Child Support Payments

Prior to the entry of the decree, while the parties were separated, Alexandra made periodic payments to Angela. According to the decree, the parties disputed the amounts paid. The decree resolved this dispute under the section entitled "Child Support." Therein, the decree states as follows:

> Father stated that he has sent Mother $4,600.00 since the parties separated. He has sent $360 eleven times, and made a $680 [payment] for the mortgage payment on the Ohio house at Mother's request, instead of making two $360 payments. Mother stated Father has sent $360 'about ten times'; when Father attempted to send money in January, Mother told him to pay the mortgage instead.
>
> **IT IS ORDERED** that Father shall have a credit of $4,640.00 against his child support obligation in this case.

Joint Ex. 2 at 11–12. According to Angela, this language demonstrates the state court's intent to treat all mortgage payments as support. This Court disagrees.

The state court was simply determining the amount of pre-decree child support to be credited to Alexandra. The most that can be inferred is that the state court

determined that a single $680 mortgage payment by Alexandra made in lieu of a direct child support payment to Angela constituted support. Angela attempts to bootstrap the post-decree mortgage payments into the category of child support even though the decree separately addressed post-decree child support by requiring Alexandra to pay $588.58 per month in child support. Effectively, Angela is attempting to double-dip by arguing that the post-decree mortgage payments constitute child support even though Alexandra incurred a separate post-decree child support obligation.[5]

### 4. Post–Decree Ruling

Angela asks this Court to consider a post-decree ruling by the state court. There is a fundamental problem with this request. Angela failed to have the post-decree ruling admitted into the record at trial. However, even if this Court were to consider the post-decree ruling, the Court finds that it supports Alexandra's position and not Angela's.[6]

Angela filed a contempt motion in state court when Alexandra failed to pay the mortgage post-decree. In response, the state court entered an Under Advisement Ruling stating:

> **IT IS ORDERED** upon closing of the transaction to sell or transfer the Ohio house, if there are net proceeds, the proceeds shall be distributed 50/50 between the parties, and if there are any liabilities, the liabilities shall be allocated 50/50 between the parties.

---

**5.** The decree further provides that "no deviation [from the Arizona Child Support Guidelines] is appropriate regarding the obligation to pay child support." Joint Ex. 2 at 12. If Alexandra's obligation to pay the post-decree mortgage payments constituted child support, one would have expected the mortgage pay-

ments to result in a downward deviation of the standard child support calculation.

**6.** Angela attached the ruling to her response to Alexandra's summary judgment motion. See Doc. 32 at Ex. 4.

However, if Mother has made any payments against the mortgage since the Decree was entered ... then (a) if there are net proceeds to be distributed to the parties, Mother shall be entitled to recover any amount she paid against the mortgage after the March 27, 2013 Decree from any distribution of funds that otherwise would have been made to Father at the closing of the transaction, and (b) if the sale or disposition of the house results in a deficiency and the parties owe a debt as a result of the transaction, then Father's share of the debt shall be increased from 50% to 50% [plus] the amount paid by Mother against the mortgage since the entry of the Decree.

When read in conjunction with the dissolution decree and Angela's pretrial statement in state court, the Under Advisement Ruling reveals an intent to treat the mortgage payments as a property division.

First, and perhaps most importantly, the Under Advisement Ruling did not provide relief to Angela for all missed payments by Alexandra. It only provided relief for the post-decree payments made by Angela. If the state court intended all post-decree mortgage payments to constitute support, one would expect the Under Advisement Ruling to alter the eventual property settlement by the amount of all payments missed by Alexandra.

Second, in her state court pretrial statement filed just twelve days before the entry of the dissolution decree, Angela made the following request if Alexandra was permitted to remain in the residence:

At any such time as [Alexandra] fails to make a mortgage payment by the 15th day of any month in which a payment is due, [Angela] may make such payment and shall receive from [Alexandra] an amount equal to the payment made plus any late fee ... plus ... a penalty.

[Alexandra] shall make such payment to [Angela] within three (3) days of receiving notice via any method of communication[.]

Joint Ex. 1 at 9. Although the decree permitted Alexandra to remain in the residence, it did not require Alexandra to reimburse Angela directly for missed payments made by Angela. The decree simply said that the net proceeds or debt would be divided equally. The Under Advisement Ruling cements this understanding of a property settlement. The Under Advisement Ruling, like the dissolution decree, did not require Alexandra to reimburse Angela directly for missed payments made by Angela. Instead, the Under Advisement Ruling clearly links any such payments by Angela to the property settlement of the marital residence. If the disposition of the residence resulted in equity, Angela's share of the equity increased proportionately. If the disposition of the residence resulted in a deficiency, Angela's share of the debt decreased proportionately.

Therefore, even if Angela wanted the state court to treat the mortgage payments as support, the state court twice refused to do so. Instead, it linked the post-decree mortgage payments to the division of equity or debt related to the marital residence.

## CONCLUSION

In this case, the traditional indicia of support suggest that the state court did not intend to create a support obligation. Accordingly, Alexandra's obligation to hold Angela harmless on the post-decree monthly mortgage payments is **DISCHARGEABLE**. A judgment to this effect will be entered.

**IT IS SO ORDERED.**